In the Matter of the Transfer Tax Upon the Estate of ELLA S. HOFFMAN, Deceased.

| 143 | 327 |
|---|---|
| 148 | 313 |
| 143 | 327 |
| 150 | 6 |
| j150 | 11 |
| 143 | 327 |
| 152 | 99 |
| 143 | 327 |
| 154 | 114 |
| 143 | 327 |
| 167 | 233 |
| 167 | 234 |
| 143 | 327 |
| 171 ¹ | 54 |
| 171 | ¹519 |

By the will of H. she gave a fund of $50,000 to trustees in trust to hold the same for the lives of the mother of the testatrix and of her daughter, the income to be paid to the mother for life and if the daughter survived, to her for life, the principal at the expiration of the trust to be paid to the issue of the daughter, if any living at her death, if none then to two nieces of the testatrix. The testatrix died leaving her mother, daughter and a child of the latter surviving. In proceedings before the surrogate to fix the amount of tax, under the Transfer Tax Act of 1892 (Chap. 399, Laws of 1892), it was decided that the value of the mother's life estate was less than $10,000. *Held*, that under the provision of said act (§ 22) declaring that the words "estate" and "property," as used therein, shall "mean the property or interest therein of the testator" passing or transferred, not that "passing or transferred to individual legatees," etc., and that the word "transfer" shall "include the passing of property or interest therein in possession or enjoyment," the life estate of the mother did not come within the limitation in said act (§ 2) declaring that "such transfer of property shall not be taxable under this act unless it is personal property of the value of ten thousand dollars or more;" that the limitation applied to the aggregate value of all the property so transferred, not to the separate value of each several transfer; and so, that the mother's interest was taxable; but that the estates of the daughter and grandchild were not presently taxable, and could only be taxed when their rights became fixed and actual.

*It seems*, that said definitions do not affect the general nature of the tax imposed by the act as heretofore determined by this court; *i. e.*, that the tax is imposed upon the right of succession to property or estates which vest in the successors severally, and not upon the property or estate of the decedent; but they apply simply to provisions of the act, like the one fixing the limitation, where the word "property" is used by itself and to some extent ambiguously, and, therefore, needs the help of a definition.

(Argued June 19, 1894; decided October 16, 1894.)

APPEAL from so much of an order of the General Term of the Supreme Court in the first judicial department, made March 16, 1894, as reversed a decree of the Surrogate's Court of the county of New York, fixing the tax, under the Transfer Tax Act of 1892, upon the estate of Ella S. Hoffman, deceased.

This appeal only involves a fund of $50,000 given by Ella

S. Hoffman in trust to her executors and trustees to hold invested during the lives of her mother, Lucinda R. Starkweather, and her daughter, Ella A. Sandford, the income to be paid to the mother for life, and after her death to the daughter for life, if she survived the mother. On the death of the daughter, or if the mother should survive her, then on the death of the mother, the principal of the fund to go to the issue of the daughter, or in default of such issue then surviving, to two nieces of the deceased, or the respective personal representatives, in equal shares.

At the time of the death of the testatrix, her mother, daughter and a minor child of the latter survived her, all of whom are now living. The appraiser appointed appraised said fund as follows: The interest of the mother of the testatrix, $9,385; the daughter, $25,428; the remainder to the latter's minor child, $15,187. The surrogate fixed the tax on these several estates at one per centum on the amounts so appraised. The General Term reversed the order of the surrogate as to the legacy to the mother of the testatrix, holding it to be exempt under the provision of the Laws of 1892 (Laws 1892, chap. 399, § 2), being less than $10,000, and also held that the legacies from said fund to the daughter and her issue were improperly taxed at this time.

*Emmet R. Olcott, Elihu Root* and *Edgar J. Levey* for appellants. The property transferred to Lucinda R. Starkweather by the will of Ella S. Hoffman (dying November 7, 1892) was subject to the tax imposed by the "Act in relation to taxable transfers of property" of May 1, 1892, and not exempt from taxation and not included in the exceptions and limitations of that act. (*In re Howe*, 112 N. Y. 100; *In re Swift*, 137 id. 84; *In re Merriam*, 141 id. 484; *People* v. *E. T. Co.*, 96 id. 396; *P. Bank* v. *Billings*, 4 Pet. 514, 561, 563; *People* v. *Mayor, etc.*, 4 N. Y. 425; *People* v. *E. T. Co.*, 96 id. 396: *In re Prime*, 136 id. 347.) The tax on the life estate of Ella H. Sandford, the daughter of the decedent, and on the vested remainder of Olga Sandford, the grand-

daughter, was properly fixed by the surrogate under the act of 1892. °(*In re Cager*, 111 N. Y. 344; *In re Stuart*, 131 id. 280; *In re Knoedler*, 140 id. 380; *In re Enston*, 113 id. 185.)

*William Allen Butler* and *Adrian H. Joline* for executors, respondents. The property passing to Lucinda R. Starkweather, the mother of the testatrix, is personal property of the value of less than $10,000, and is, therefore, exempt from taxation under the statute. (Laws of 1892, chap. 399; Laws of 1885, chap. 483; *In re Cager*, 111 N. Y. 343; *In re Howe*, 112 id. 100; *In re Swift*, 137 id. 77.) The bequest of the income of $50,000 to Ella H. Sandford, after the death of Lucinda R. Starkweather, is not taxable, because it is conditioned upon the contingency of the survival of Ella H. Sandford, and its present "fair market value" is incapable of ascertainment. (*In re Curtis*, 58 N. Y. S. R. 348.) The allowance of costs to the comptroller on the appeal to the surrogate was improper. (Code Civ. Pro. § 2561.)

*Charles H. Daniels* for Olga Sandford, respondent. The remainder devised by the fourth clause of the will of Ella S. Hoffman, deceased, is not susceptible of taxation. (*In re Curtis*, 58 N. Y. S. R. 348.)

FINCH, J. In construing the Inheritance Tax Law as it stood prior to the act of 1892, we had occasion to decide that it imposed a tax upon the right of succession to the property of the testator or. intestate which vested in the successors severally and in their respective shares or proportions, and not upon the property or estate of the decedent. The shares received, in the hands of the recipients, were the measures of the right which was subjected to assessment, and the imposed tax could be enforced personally against the successor charged.

One effect of this construction manifested itself when a question arose over the provision which limited the assessment to estates of five hundred dollars or over. The inquiry was, what estate was meant; whether the aggregate estate passing *from* the testator or intestate, or the particular share passing *to* the suc-

cessor. We solved that problem in two cases. (*In Matter of Cager*, 111 N. Y. 344; *In Matter of Howe*, 112 id. 100.) In the first of these Judge RUGER said, somewhat curtly, that the tax was upon the individual, but in the second Judge DANFORTH explained that the scope of the enactment was to tax shares passing to their recipients; and the word "estate," to which the limitation of five hundred dollars was attached, must necessarily mean the estate received by the particular successor, and not that of the testator or intestate upon which as such and in the aggregate no tax was imposed.

The precise nature of the succession tax grew to be a very important subject of investigation when questions arose over property situated without the state, and led to some differences of opinion. *In Matter of Estate of Swift*, (137 N. Y. 77), Judge GRAY expressed his own doubts as to the true nature of the tax, but declared the judgment of the court to be that it is a tax on the right of succession under a will, or by devolution in case of intestacy; and the doctrine was confirmed and followed in the opinion of Judge BARTLETT, dealing with a legacy given to the United States. The general doctrine must, therefore, be deemed settled in this court unless it has been changed by the act of 1892.

Before that was passed, the scope of the statute had been extended by including within its operation not only shares and interests passing to collaterals, but also those passing to lineals; although as to the latter the rate of taxation was lessened, and a limitation imposed applying the tax only where the property exceeded in value the sum of ten thousand dollars. This provision raised the same question as to lineals which had previously been determined as to collaterals, viz., which property was meant; whether that passing from the decedent, or that passing to the particular successor. Of course, it was determined in the same way, and, by general consent scarcely needing adjudication, was held to mean the specific share passing to the successor. It was thus possible for a testator to avert the tax by reducing intended legacies of ten thousand dollars to lineals to a sum slightly below that amount.

The act of 1892 was a revision of the whole law on the subject. It was passed with knowledge of our decisions and in view of our construction, and was obviously intended in some respects to compel on our part different conclusions. I do not think there was any such purpose so far as our general doctrine as to the nature of the tax is concerned. There are some changes of phraseology in the more important sections, but I think it remains true that the tax is one upon the right of succession, levied upon successors in respect to the shares to which they succeed, and not upon the decedent's estate as such.

The question first presented on this appeal, relating to a life estate bequeathed to the mother of the testatrix, and valued at less than ten thousand dollars, must be decided, as it always has been in similar cases hitherto, in favor of the legatee, unless in that respect the law of 1892 has changed the necessary interpretation. But I think it has, and that such result was directly and consciously intended by the legislature. I put little reliance upon changes of phrase which do not necessarily indicate a change of legislative intent, but I am unable to understand the entirely new provision of section 22, unless its purpose is to compel a change of our previous construction, and require us to attach the limitation of ten thousand dollars of value to the estate of the decedent, and not to the several and particular estate passing to the successor. The material language of the section is this : " The words ' estate ' and ' property,' as used in this act, shall be taken to mean the property or interest therein of the testator, intestate, grantor, bargainer or vendor, passing or transferred to those not specifically exempted from the provisions of this act, and not as the property or interest therein passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees or vendees. * * * The word ' transfer,' as used in this act, shall be taken to include the passing of property, or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, bequest, grant, deed, bargain, sale or gift in the manner herein prescribed." It will

be observed that the idea of the lawmaker is explained by
declaring not only what the words " estate " and " property,"
as used in the act, shall mean, but also what they shall not
·mean; and the negation is a denial in terms of the precise
construction which this court had previously adopted in
determining what was meant by the word " estate," when used
ambiguously and without qualifying words, as it was used in
connection with limitations of value.

I recall that I have somewhere spoken of the danger of
legal definitions, because almost always certain to prove
incomplete and inaccurate, and those referred to are now
relied upon and used to overturn and utterly reverse the
whole scope and theory of the act as described in our decis-
ions : for the appellant claims that by force of those defini-
tions the tax is no longer upon the shares of individuals or
their right of succession, but upon the property of the dece-
dent in the hands of his executors or administrators.    It would
have been easy to have said that if such a reversal of our theory
of the tax had been intended ; but all through the act it is per-
sistently declared that the tax is imposed, not upon the prop-
·erty of the decedent, but upon the transfer of that property to
persons not exempt from taxation.    It was useless, upon this
point, to define the word " estate," for it does not appear at
all in the first two sections which impose the tax.    But
the definition of the word " property " as being the aggre-
gate transfer to the aggregated taxable transferees, can-
not be applied to those sections generally without involv-
ing the statute in contradictions and utter confusion : for
the aggregate transfer is clearly not taxed as such ; it is con-
stantly distributed into the separate transfers bearing different
rates of taxation, chargeable severally against the several
transferees, each made personally liable for his own tax, and
that to be collected by executors and administrators severally
and in due proportions out of the shares of each.    The whole
law is full of this distinction, provides for it in every direc-
tion, and would be a discord of difficult explanation if we
applied the definition generally.    Nothing, therefore, in these

definitions can be permitted to touch our general doctrine of
the nature of the tax. But what then do they touch, and
what purpose do they subserve? We must look for some
place in the act where the word " property " is used by itself
and to some extent ambiguously, and, therefore, needs the
help of a definition. We find such a possible place in section
two, where the phrase is, " unless it is personal property of
the value of ten thousand dollars or more." That may mean
the aggregate value of all the property transferred to taxable
persons, or the separate value of each several transfer. We
had said that it meant the latter, but now comes the legisla-
ture declaring that the word "property" shall mean what
passes to those not exempted, and not what passes to individ-
ual transferees. While the prohibition cannot apply to the
general theory of the tax, it can apply to this description of a
specific limitation. We had said it related to the property of
individual transferees, but that construction section 22 was
intended to forbid and to prevent. If it does not mean that I
am unable to perceive any office it can perform or any useful
purpose it can subserve. That effect, I think, we are bound
to give it, since we can do so without disturbing the scope of
the act, and in view of the legal situation which existed and
the possible evil which it was thought prudent to prevent.
And so we are prepared to say that the interest of the mother
is taxable at one per cent, although itself of a value of less
than ten thousand dollars, because the aggregate transfers by
the will to taxable persons exceeded that amount.

As to the estates of the daughter, Ella, and the grand-
daughter, Olga, we agree with the conclusions of the General
Term. By the will the mother took a life estate. If upon
her death Ella survives, the latter will take a life estate, but if
she dies before her mother Ella will take nothing and have
no estate to be taxed. In that event there will have been no
actual transfer to her of any portion of the property of the
decedent. She ought not to be taxed until events make it
certain that there is an actual and beneficial transfer of the
property to her. The remainder goes to Olga if she is living

at the death of her mother, but if she is then dead without issue that remainder goes to certain nephews and nieces. If it goes to her it will be taxable at one per cent, but if to the collaterals then at five per cent. Until events determine the question it cannot be known what tax is chargeable nor by whom it is payable. Our decision in *Matter of Curtis*, (142 N. Y. 219), is not decisive because the facts are essentially different, but in that case I expressed what was our decided drift of opinion in cases more like the present, and was fairly settled later in *Matter of Estate of Roosevelt*, (143 N. Y. 120). We are obliged to follow one of two lines of construction. We must open all the nice and difficult questions which arise under a will as to the vesting of technical legal estates although future and contingent, and assess the tax upon what are in reality only possibilities and chances, and so complicate the statute with the endless brood of difficult questions which gather about the construction of wills; or we must construe it in view of its aim and purpose and the object it seeks to accomplish, and so subordinate technical phrases to the facts of actual and practical ownership. For taxation is a hard fact, and should attach only to such ownership, and may properly be compelled to wait until chances and possibilities develop into the truth of an actual estate possessed, or to which there exists an absolute right of future possession. I am not shutting my eyes to the statutory language, which is quite broad. The property taxed may be an estate "for a term of years or for life or determinable upon any future or contingent estate," or "a remainder, reversion or other expectancy," and the tables of mortality may be resorted to for the ascertainment of values. And yet, it is the "fair market value," the "fair and clear market value" which is to be assessed, and with the proviso that if that value cannot be at once ascertained the appraisal is to be adjourned. I can scarcely imagine a contingency depending upon lives which mathematics could not solve by the doctrine of chances and the averages of mortality, and there could hardly be an adjournment unless upon some rare contingency having no averages, and the results in cases

dependent upon lives might still leave the "fair and clear market value" in doubt and yield sums which no sale in the market would produce.    My judgment is further guided by the very significant definition of the word "transfer" in section 22.    It "shall be taken to include the passing of property or any interest therein in possession or enjoyment present or future."    It thus contemplates a present enjoyment or a fixed and absolute right of future enjoyment and adjourns the appraisal until the fulfillment of contingencies leaves those results attained.

Here there must be that adjournment until the rights of Ella and Olga become fixed and actual.    The result does no injustice to the state.    The trust fund must remain in the hands of the executors to feed the life estates and for payment over of the remainder.    The executors must pay the tax when they know against whom it is chargeable and the rate to be assessed.    The state will get its tax when the legatees get their property.

The order of the General Term should be modified by declaring the life estate of the mother taxable as decreed by the surrogate, and, as modified, affirmed, without costs to either party.

All concur, except ANDREWS, Ch. J., not sitting.

Ordered accordingly.