(60 App. Div. 286.)

### In re PELL'S ESTATE.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

1. TAXATION—STATUTES—REMAINDERS—TIME OF VESTING—POSSESSION.

    The transfer tax law (Laws 1899, c. 76) provides: "All estates on remainder or reversion which vested prior to June 30, 1885, but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein until after the passage of this act, shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof." *Held* to apply when estates in remainder, defeasible on the death of the remainder-man, were created in 1863, and the life tenant died in 1899, since the succession or legal transfer took place at the death of the testator in 1863, though the remainder-men did not come into possession until the death of the life tenant.

2. SAME—CONSTITUTIONALITY.

    The statute imposes a tax not on the right of succession, but on property, and is constitutional.

3. SAME—VESTED RIGHTS—RETROACTIVE OPERATION.

    As retroactive legislation is not forbidden by the constitution, such legislation is only unconstitutional when affecting vested rights; and as the act affects the property, and not the succession, it is valid.

    Patterson, J., dissenting.

Appeal from surrogate's court, New York county.

In the matter of the transfer tax on the estate of Walden Pell, 1st, deceased. From an order of the surrogate refusing to declare the estate exempt from the tax, the administrator appeals. Affirmed.

Walden Pell, 1st, died a resident of New York City in 1863, leaving a last will and testament, which was admitted to probate on the 16th day of May, 1863. By the terms of the will the testator gave a life estate in all of his

property, real and personal, to his widow, with remainders over at her death in equal shares to his nephews and nieces, and to the issue of any deceased nephew or niece, together with one equal share thereof to his sister, Emma. The widow died on the 20th of December, 1899, at which time the estate in remainder came into the actual possession of the beneficiaries under the will. Previous to the death of the widow (the life tenant), section 230 of the taxable transfer law was amended by the incorporation, among others, of the following provisions: "All estates upon remainder or reversion, which vested prior to June thirtieth, eighteen hundred and eighty-five, but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein until after the passage of this act, shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof." Laws 1899, c. 76. The administrator applied to the surrogate praying for an order declaring that the estate is exempt from the transfer tax act, which application was denied, and from the order entered thereupon this appeal is taken.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

E. Ellery Anderson, for appellant.
Jabish Holmes, Jr., for respondent.

O'BRIEN, J. All of the questions except one presented for our consideration on this appeal have been disposed of in Re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401. The subject of taxation there before the court arose under the revised act of 1892 (chapter 399), and, as said therein, "the question involved is whether the vesting in possession, which occurred after 1892, is a transfer or succession then for the first time passing, and so taxable under the act, or, if not then first occurring, is at least made taxable by the explicit language of the statute." Upon the first branch of the question there involved it was held (headnote) that, "when a devise or bequest of a remainder works a vested, although a defeasible, interest in the remainder-man on the death of the testator, notwithstanding possession does not pass until the death of the life tenant, the transfer or succession takes place at the death of the testator." Considering the will here in question, it is clear that the beneficiaries under the will of Walden Pell, 1st, took vested interest, and, though these interests were subject to be defeated by the death of any of the remainder-men during the life tenancy, still, under the rule relating to the construction of wills, the succession or legal transfer took place upon the death of the testator, which in this case was in 1863, long prior to any tax act. Were the question before us, therefore, as to the right to tax beneficiaries under the act of 1892, the same conclusion would necessarily follow that the vesting in possession which occurred after the enactment of the act of 1892 was not a transfer, but a succession then first occurring, and hence did not render the estate taxable for that reason, and that the act of 1892 did not retroact upon the transfer, which occurred when the will took effect upon the death of the testator, before the act became a law. After the decision in Re Seaman, supra, the legislature amended the transfer tax law by adding thereto chapter 76 of the Laws of 1899, under the express terms of which this estate is made taxable. We do not understand that it is seriously dis-

puted that this estate falls within the direct provision of the law of 1899, or that, if such provision is valid, it would render the estates in remainder taxable. Thus it will be seen that the second branch of the question as outlined in the Seaman Case, and which was decided adversely to the right of the state to tax, must here be answered by holding that the bequests of money and devises of estates in remainder involved in this proceeding are "made taxable by the explicit language of the statute." Although it was not decided in the Seaman Case that, had the statute been applicable there, the tax would have been valid, there is a strong intimation (and an argument is fairly deducible from the manner in which the subject was treated) that, had the statute directly applied, the tax would have been upheld. The question, therefore, presented for our determination (holding, as we do, that the law in its provisions is directly applicable to this estate) is whether such a law is valid and constitutional. It has frequently been decided with respect to residents that the purpose and intent of the transfer tax act is to. impose a tax, not on property, but upon the right of succession. And if we could conclude under the transfer tax act that nothing could be taxed but the right of succession, then it would follow in this case—as the right to succession passed in 1863—that the property here involved was not taxable. By other provisions of law relating to nonresidents and gifts causa mortis, the transfer tax has been upheld as one upon property. So here this tax must be supported, if at all, upon the theory that it is a tax upon property; and we are called upon to consider the alleged injustice of such a tax, and the constitutional objections to it. It is insisted that, as the title to the property here involved passed to the remainder-men in 1863, the effect of allowing it now to be taxed would be to permit the legislature, under the guise of a tax on succession, to tax property which for years belonged to the remainder-men. It is true that their estates vested, and the title passed, at the death of the testator in 1863. That is equivalent to saying that the legal transfer then took place. Had there been a tax law at that date, however, similar to the law now in effect, the tax could not then have been collected, for the reason that it could not be definitely determined what particular individuals would eventually enter into possession as remainder-men, and actual taxation therefore would have had to be deferred until actual possession was obtained by the remainder-men. So here, what was intended by the amendment of 1899 was to tax the transfer of property which remainder-men are now entitled to the actual possession and enjoyment of. Until the termination of the life estate the individuals who are to take in remainder could not be determined; and under the terms of the will, unless those named survived the life tenant, they would never obtain possession. Although remainder vested in them, and upon their survival of the life tenancy they would come into possession, it is not literally true—though it may be legally—to assert that before the date of actual possession arrived the property belonged to the persons designated in the will. From the very nature of defeasible or expectant estates, it was found to be inequitable and unjust to

tax them when the succession took place, for the reason that then persons might be obliged to pay the tax who would never receive the property; and the course of the decisions and the legislation has been to avoid such injustice by making the tax payable when the actual transfer of property to the individuals occurs. That this is not beyond the power of the legislature has been held in several cases in this court and the court of appeals, the last of which is In re Vanderbilt's Estate, 50 App. Div. 246, 252, 63 N. Y. Supp. 1079. There a fund was left subject to be distributed under a power of appointment given by a will which was probated before the tax law of 1897 was passed. The power of appointment, however, was not exercised until after 1897. As therein said:

"While the appointees take by relation back so as to derive their title under William H. Vanderbilt's will, they must take their specific shares in designated amounts from the time of the execution of the power, and we think that the authority of the state to impose a tax on the right of succession continued until the time at which the extent of that right was finally fixed by the exercise of the power of appointment."

And it was held, as correctly summarized in the syllabus, that:

"The power of the state of New York to impose a tax on the ultimate right of succession to the principal of the trust fund, to fix the time at which the right of succession shall be taxed, and to define what shall constitute a transfer within the meaning of the taxable transfer act, so long as that definition does not involve a violation of either vested or contract rights, continued until the time at which the extent of that right was finally fixed by the exercise of the power of appointment."

There is, of course, a marked distinction between the Vanderbilt and the present case, but the former is instructive as showing that, while the legal right of succession related back to the time of the will, which was prior to the enactment of the tax law, this did not prevent the state from taxing the succession when the actual transfer took place. There are other cases in the court of appeals which show the course of legislation and the change in the rules as applicable to the taxable status of estates, and which, overthrowing the former rule under which vested remainders, while liable to be defeated, were taxed, have held that beneficiaries, although their interests may be technically vested, are not taxable until they have "a fixed and absolute right of enjoyment," and "until events make it certain that there is an actual and beneficial transfer of property to them." In re Hoffman's Estate, 143 N. Y. 327, 38 N. E. 311; In re Roosevelt's Estate, 143 N. Y. 120, 38 N. E. 281, 25 L. R. A. 695; In re Curtis, 142 N. Y. 219, 36 N. E. 887. What the legislature here intends is to tax property when the transfer actually takes place. It could not very well tax the right of succession, for that had taken place years before the tax act was passed; and we think, therefore, that the tax can only be supported upon the principle that it is a tax on property.

This brings us to a consideration of the extent to which the state has the power to tax; and, as said in Cooley, Tax'n, p. 3:

"The power of taxation is an incident of sovereignty, and is co-extensive with that of which it is an incident. All subjects, therefore, over which the sovereign power of the state extends, are, in its discretion, legitimate subjects of taxation; and this may be carried to any extent to which the government

may choose to carry it. In its very nature it acknowledges no limits, and the only security against abuse must be found in the responsibility of the legislature which imposes the tax to the constituency who are to pay it."

And in People v. Mayor, etc., 4 N. Y. 423, in speaking of the constitutional objections, the court says:

"They were founded on these clauses of the constitution which declare that no person shall be deprived of his property without due process of law, and that private property shall not be taken for public use without just compensation. Neither of these prohibitions applies to taxation."

See, also, People v. Equitable Trust Co. of New London, 96 N. Y. 395.

In Re McPherson, 104 N. Y. 306, 10 N. E. 685, which involved the constitutionality of the original collateral inheritance tax, it was said:

"It is not very important to determine in this case whether the act of 1885 is to be regarded as imposing a tax upon property or upon the succession or devolution of property by will or intestacy. In either case it is a special tax. In the one case it is a tax upon the particular class of property, and in the other case a tax upon the succession or devolution of property, or the right to receive property in the cases mentioned in the statute. Whether it be one or the other, it is free from constitutional objection."

It may seem incongruous that a transfer tax act, which in principle was intended to impose a tax upon the right of succession, should be construed in such a way as to uphold the tax as one upon property. In view of the authorities, however, to some of which we have referred, we find no means of escape, either upon constitutional or other grounds, from the conclusion based on the well-expressed argument of the respondent, which we take the liberty of quoting:

"The legislature has unlimited power to select the subject of taxation, and to impose a tax upon any class of persons or property it selects, so long as it makes the tax uniform upon all that class of persons or property. * * * Therefore, without regard to the question whether a person receives a vested interest under a will in the shape of a beneficial right in expectancy, making him the possible absolute beneficiary of an estate in remainder, it is clearly within the legislature's control over taxation to impose a tax upon all persons actually receiving property through such a beneficial right in expectancy, when they actually receive it. The legislature has only selected a certain class of persons and property, and subjected them to taxation, and in so doing it has violated no constitutional rights of the owners, because the constitutional provisions do not apply to taxation. The provisions of the transfer tax law taxing the property of nonresidents and gifts causa mortis are taxes upon property, and the tax in question can be sustained as such a tax."

The contention that this is a private act, and must be held to be void because the purpose is not included within the purpose covered by the title to the act, and that it is in violation of the constitution of the United States, which forbids the passage of any law impairing the obligation of contracts, we have considered, but do not regard as sound. The constitution of our state—in that respect differing from the constitutions of many other states—does not forbid retroactive legislation; and the argument that the law is retroactive, and affects rights which had vested before its passage, would be sound only if the scope of the act were confined exclusively to taxing the right of succession. Retroactive legislation which im-

pairs vested rights is unconstitutional, but upon the principle that what is here sought is to tax property there is wanting a basis upon which the constitutional argument can rest. Our conclusion, therefore, upon the whole case is that, if the tax sought to be imposed could only be supported upon the principle that it is a tax upon the right of succession, then there would be objections—among them constitutional ones—to its validity; but that with reference to the estate here involved, if the act can be construed—as, with some misgivings, we think it can—as a tax upon property, it is free from constitutional objections, and the tax may be upheld.

The order is accordingly affirmed, with costs.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur; INGRAHAM, J., in result. PATTERSON, J., dissents.