(Supreme Court, Appellate Division, First Department. January 10, 1902.)

1. TRANSFER TAX—EXEMPTIONS—CHARITABLE BEQUEST.

Laws 1900, c. 382, enacting that the exemptions of Gen. Tax Law, § 4, are not to be construed as applying to the provisions of article 10 imposing a transfer tax, makes legacies to charitable institutions taxable only where the testators have died after the passage of the act.

2. SAME—VALUE OF SUCCESSION—DEDUCTION OF FEDERAL TAX.

In ascertaining the value of a succession to property for the purposes of the state transfer tax, the legacy tax due under the federal revenue laws should be first deducted.

3. SAME—LEGACY TO EXECUTOR—EXEMPTION.

Tax Law, art. 10, § 227, providing that, where legacies are left to executors in lieu of compensation, the excess in value of the legacy over the compensation prescribed by law, only, should be taxed, does not apply where testator leaves legacies to the individuals who are to be his executors, but directs that no compensation shall be paid to his executors.

4. SAME—CONTINGENT REMAINDER.

Tax Law, § 230, provided that estates in expectancy which are contingent or defeasible shall be appraised at their full, undiminished value when the persons entitled thereto shall come into the beneficial enjoyment thereof. · Laws 1899, c. 76, amendatory thereto, provided that when property is transferred in trust or otherwise, and the estates of the transferees are dependent upon contingencies whereby they may be wholly or in part created, defeated, or extended, a tax shall be imposed on such transfer at the highest rate which on the happening of such contingency will be possible, and such tax shall be due and payable forthwith out of the property transferred. *Held,* that the tax on a contingent remainder was not payable until the estate vested in possession, as otherwise the effect would be to tax the property and not the succession.

Ingraham and Laughlin, JJ., dissenting.

Cross appeals from order of surrogate, New York county.

In the matter of the transfer tax upon the estate of Cornelius Vanderbilt, deceased. Cross appeals from an order of the surrogate affirming an order fixing the amount of the transfer tax. Modified.

See 68 N. Y. Supp. 1150.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

G. D. B. Hasbrouck, for appellant comptroller.

Henry B. Anderson, for appellants executors.

Wm. J. Washburn, for respondent New York Christian Home **for** Intemperate Men.

John H. Cole, for respondent Society of St. Johnland.

PATTERSON, J. These are cross appeals from an order of the surrogate's court in the county of New York, fixing the amount of tax payable upon transfers of interests passing under the will of the late Cornelius Vanderbilt. The comptroller of the state of New York appeals from the failure, neglect, and refusal of the surrogate to fix the tax on certain interests in remainder created by the testator, and also from the failure, neglect, and refusal to fix the tax

upon legacies to charitable corporations. The executors of the will appeal from the surrogate's refusal to allow, by way of reduction of the total assessed value of the estate, a sum paid to the United States government as taxes upon legacies, and also from a refusal to deduct from such total assessed value an amount equal to the commissions to which the executors and trustees named under the will would be entitled by law as and for their commissions. Alfred G. Vanderbilt also appeals individually from the decree of the surrogate, substantially upon the same grounds as those taken by the executors.

First. The bequests to charitable or benevolent corporations were not subject to the transfer tax. Since the argument of these appeals at the bar of this court, it has been held in the court of last resort (In re Huntington's Estate, 168 N. Y. 399, 61 N. E. 643) that under the act of 1900 (chapter 382, Laws 1900) bequests to charitable corporations, such as those respondent here, are subject to the imposition of a transfer tax, that act having added to article 10 of the general tax law a section (section 243) which enacts that the exemptions mentioned in section 4 of the general tax law are not to be construed as applying in any manner to the provisions of article 10 imposing a transfer tax. But in the same case it is said, in effect, that legacies to such corporations, exempt from taxation under prior laws, are only taxable under the act of 1900 in cases where testators have died after the passage of that act.

Second. The legacy tax due to the federal government under the United States war revenue law of June 13, 1898, should have been deducted from the total assessed value of the estate of the testator, the succession to which is taxable under the transfer tax law of New York. Since this matter came before us, this subject has been considered and decided by the appellate division in the Second department (In re Gihon's Estate, 64 App. Div. 504, 68 N. Y. Supp. 381, 72 N. Y. Supp. 1104), and it was there held that, in ascertaining the value of a succession to property for the purposes of the state transfer tax, the legacy tax due under the federal revenue law should first be deducted. The reasoning by which this conclusion was reached is set forth in the opinion of Silkman, surrogate, which was adopted by the appellate division, and we are not disposed to differ with that court in the view it has taken of this question.

Third. In Re Gihon's Estate, supra, it was also decided, in effect, that commissions allowed by law to executors and trustees should also be deducted in the same manner as United States legacy taxes, but the special provisions of Mr. Vanderbilt's will are such as to render inapplicable as authority what was decided in that behalf in the Gihon Case. It is provided in article 10, § 227, of the tax law that "if a testator bequeathes or devises property to one or more executors or trustees in lieu of their commissions or allowances, or makes them his legatees to an amount exceeding the commissions or allowances prescribed by law for an executor or trustee, the excess in value of the property so bequeathed or devised above the amount of commissions or allowances prescribed by law in similar cases shall be taxable under this article." Mr. Vanderbilt in

his will provided as follows: "I direct that no compensation or commission as such shall be paid to any living executor or trustee under this will for any services as executor or trustee hereunder." It is obvious that the testator intended that his estate should not be diminished by these ordinary expenses of administration, and it is equally obvious, from a general survey of the will, that the legacies given to the executors were not so given in lieu of commissions. The meaning of section 227, above cited, may be that where legacies are given for the services of executors, and are to be a substitute for statutory allowances, an exemption from taxation, to the extent of such legacies, is created; but we cannot find, from anything in this will, that these legacies to the individuals appointed executors were in any way dependent upon or affected by the performance of executorial duties. This view receives enforcement from the provisions of the nineteenth clause of the will, concerning the authority and power given to the executors and trustees under the will to transfer and convey any single trust fund, or any number of trust funds set apart pursuant to the provisions of the will, to the Union Trust Company, upon the same trusts as those named in the will. If those transfers are made and the execution of the trusts or any of them devolve upon the Union Trust Company, that would not entitle that company to the fees or compensation provided by statute for trustees, and for the reason that by the nineteenth clause the terms upon which such transfer of the trust funds are to be made are such as may be agreed upon between the trustees and the Union Trust Company, thus leaving the whole matter open as a subject of treaty between the executors and trustees and the Union Trust Company. We can find nothing in this will that would authorize the deduction from the total assessed value of taxable interests of the fees and commissions of executors and trustees.

Fourth. The surrogate refused to fix the amount of a tax upon certain future interests in shares or portions of the testator's estate bequeathed to legatees having life interests, or set apart to constitute capital sums from which annuities were to be paid to certain persons, or which could accrue under powers of appointment. All these future estates or interests are grouped together and treated as remainder interests, in respect of which it appears that there is no person now absolutely entitled in possession or absolutely in expectancy. The provisions of Mr. Vanderbilt's will concerning these future interests are substantially as follows: He gave to his wife for life certain household furniture in his residence at Newport, R. I., with a power of disposition by will of such property to and among four of his children. He also required his executors to divide a capital sum of $20,000,000 into four shares, to hold one of such shares in trust for each of his four children named, the trust as to each child to endure during the life of that child; upon the death of each life beneficiary of that trust, to pay the capital sum of his or her share to such persons and in such proportions as he or she might appoint by last will and testament, and, if no such appointment were made, then to the children of such life beneficiary per stirpes; and if either of these life beneficiaries died without is-

sue, the capital of the share from which he or she derived income was to be distributed among the survivors of those four children, share and share alike. The testator also created a trust of $1,000,-000 for the benefit of one of his sons during the life of such son, with directions upon his death to divide the capital of that specific trust fund among the children of such son, and to hold such divided shares during the life of the youngest child of such son living at the time of the death of the testator, and upon the termination of the trust the capital to be divided among the persons for whose use it was held, and if the son, the primary beneficiary of the trust, died without issue, the capital of that particular trust was to pass into the residuary estate. By another clause of the will, the testator gave his wife an annuity of $250,000, and required his executors and trustees to set apart an amount of securities sufficient to produce the annual income given. Upon the death of his wife, the securities so set apart are to be divided among four of his children in such proportions as his wife might by last will and testament appoint, and upon default of such appointment the securities constituting the capital from which the annuity for the wife was to be raised were to be divided among the four children named, and the issue of a deceased child to take the share the parent would have taken if living. The testator also directed that certain sums of money be set apart to pay annuities to several persons who are named, and on the death of the annuitants the fund or security out of which they were raised to pass into the residuary estate, which residuary estate is given to the executors in trust to pay the income therefrom to one of the testator's sons until that son becomes 30 years of age, at which time he is to receive absolutely one half of the residuary estate. This trust is to continue as to the other half, and the income of that other half is to be paid in such sums until he attains the age of 35 years, at which time possession of the whole amount is to be given to him. Provision is then made in the will for the disposition of the principal of the residuary estate in case of the death of the son before reaching the age of 35 years, leaving issue; also in case of his death before attaining that age without issue.

The comptroller of the state of New York contends that the surrogate should have fixed a tax on the succession to the residuary estate, on the transfer of the remainders on the annuity, on the transfer of the remainder interests in the trust fund of one-half of the residue when the son to whom that residue is primarily given arrives at the age of 30 years, upon the transfer of the remainder of the residue when that son reaches the age 35 years, and upon the transfer of the income of one-half of the residue for the period of 5 years between that son attaining his thirtieth and his thirty-fifth years. This contention of the comptroller is based upon a provision of section 230 of the tax law, as amended by chapter 76 of the Laws of 1899, and which enacts in this relation that:

"When property is transferred in trust or otherwise, and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, ex-

tended or abridged, a tax shall be imposed upon such transfer at the highest rate which on the happening of any of the said contingencies or conditions will be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith out of the property transferred."

Prior to the passage of the amendment of 1899, the statute contained the following provision:

"Estates in expectancy which are contingent or defeasible shall be appraised at their full undiminished value when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof, without diminution for or on account of any valuation theretofore made of the particular estates for purposes of taxation, upon which said estates in expectancy may have been limited."

·As the section now reads, taxation at the time the estates in expectancy fall into possession is only to be made in cases in which proceedings for the determination of the tax have not been previously had or have been held in abeyance. It is conceded that, prior to the amendment of 1899, such future interests as are sought to be assessed for taxation in this proceeding could not have been so assessed until they vested ·in possession. Such was the decision of the courts. In re Hoffman's Estate, 143 N. Y. 327, 38 N. E. 311; In re Curtis, 142 N. Y. 219, 36 N. E. 887; In re Davis' Estate, 149 N. Y. 539, 44 N. E. 185; In re Roosevelt's Estate, 143 N. Y. 120, 38 N. E. 281, 25 L. R. A. 695. It is not the mere vesting of remainders that renders them contingent taxable interests under the law. In re Curtis, 142 N. Y. 219, 36 N. E. 887. The substantial question here is, what is the effect of the amendment of 1899 of section 230 of the tax law? Does it operate to render taxable the transfer of such future interests as these now under consideration before they vest in possession? An easy solution of the question may be reached by saying that, the legislature having enacted the new provision of section 230 as it now stands, and by remodeling that section having virtually expunged that absolute provision which related to the taxation of estates in expectancy which are contingent, at the time when the persons entitled thereto should come into the possession or beneficial enjoyment thereof, intended to adopt an entirely new rule, and to make those future and contingent interests taxable as of the time of the death of the testator. But when we come to consider what has been retained in the statute, that· conclusion is inadmissible, for these retained provisions are totally repugnant to it. If the future defeasible or contingent interests disposed of by Mr. Vanderbilt's will, including those that may ultimately vest under the exercise of powers of appointment, are presently taxable, then, in practical effect, the tax is imposed upon property, but it is obvious that it was not the intention of the legislature to change the nature of the tax. It still remains a tax upon succession. It is imposed upon the transfer of property. The nature of a transfer is not changed, as that term has been judicially defined. The word "transfer" in the inheritance tax law is used in its ordinary signification, namely, ·that the owner of a thing delivers it to another with the intent of passing the rights which he has in it to the latter. In re Gould's Estate, 156 N. Y. 423, 51 N. E. 287. By section 230, which is said to con-

trol this case, it is provided that when property is transferred, in trust or otherwise, a tax shall be imposed upon said transfer, and shall be due and payable forthwith by the executors or trustees out of the property transferred. The law still requires an appraisal of each interest transferred, and the fixing of the tax upon each interest, and its collection from the executors or trustees out of the property transferred. The transfer referred to here is that which is made by the testator to the recipients of the interest bequeathed by him. It is still the right of a transferee to succeed to such portion of the testator's estate, and only to such portion, as is given to him by the will. It certainly could not have been the intention of the legislature to take any portion of the property of one legatee to pay the tax upon the transfer of another portion to some other legatee, and yet, if a tax upon remainders is to be presently payable by executors, the principal of the funds out of which such life interests are to be paid will be diminished by just so much as the amount of the tax on the remainders, and the holders of such life interests will be compelled to pay a tax upon their own interests and a portion of the taxes imposed upon the transfers of the remainders. It is true that in this particular case that effect would not be operated, because there is a provision in the will of Mr. Vanderbilt which requires that all inheritance and transfer taxes upon bequests shall be paid out of the estate generally; but such would be the effect under wills not containing such a direction. The difficulty in the present case is that these future interests created by the will are of such a character that they cannot be assessed at present without imposing a tax on property. That property could in no event be assessed at other than the market value of the interests in it that are transferred, and that market value is not ascertainable by a resort to mortuary tables, as is pointed out by Judge Finch in Re Hoffman's Estate, supra. Whatever may have been the intention of the legislature in enacting the amendment of 1899, the provisions of that amendment are ineffectual to change the nature of the transfer tax, and more definite and particular legislation is required before such future interests as those created by Mr. Vanderbilt's will and now under consideration may be made the subject of taxation before they vest in possession.

We think the surrogate was right in refusing to impose a tax on these remainder interests, as they have been called for the purposes of general description.

The order or decree of the surrogate should be modified in accordance with the views above expressed, and, as modified, affirmed.

VAN BRUNT, P. J., and HATCH, J., concur.

INGRAHAM, J. (dissenting). I concur with Mr. Justice PATTERSON, except as to the liability to taxation of the interest of the remainder-man under the seventeenth clause of the will to taxation. I think the surrogate was right so far as the remainders were contingent, there being at the death of the testator no person in being in whom the remainder vested. In such a case there was

clearly no transfer of the remainder upon the death of the testator, for there was no transferee, and I assume that to make a valid transfer there must be a transferee as well as a transferror. Where there was a life estate given with a power of appointment of the remainder, it would seem that until that power was exercised there was no transferee, so that the provision of the tax law which taxes a transfer could not apply. A different interest, it seems to me, was created by the bequest and devise of the rest, residue, and remainder of the estate by the seventeenth clause of the will; for by that clause there was a devise and bequest to the executors in trust to hold the property for the benefit of the testator's son Alfred G. Vanderbilt until he should arrive at the age of 30 years. Upon his arrival at that age he was to be paid one-half of the remainder of the estate. The executors were to hold the remaining one-half in trust for him until he should arrive at the age of 35 years, when he was to receive the balance of the estate, with a provision for the final disposition of the property held in trust in case Alfred G. Vanderbilt should die before he arrived at the age at which he would be entitled to the possession of the estate. I think that this created a remainder which vested in Alfred G. Vanderbilt, subject, however, to be devested by his death prior to the time at which he would be entitled to receive the absolute title to the property. There was therefore a transfer of the property to Alfred G. Vanderbilt, and that brings the case, if it was taxable, within the provision of section 230 of the tax law as amended by chapter 76 of the Laws of 1899. That section now reads as follows:

"* * * Whenever a transfer of property is made, upon which there is, or in any contingency there may be, a tax imposed, such property shall be appraised at its clear market value immediately upon such transfer, or as soon thereafter as practicable. * * * Where any property shall, after the passage of this act be transferred subject to any charge, estate or interest, determinable by the death of any person, or at any period ascertainable only by reference to death. the increase of benefit accruing to any person or corporation upon the extinction or determination of such charge, estate or interest, shall be deemed a transfer of property taxable under the provisions of this act. * * *"

By the seventeenth clause of the will, this remainder was transferred to Alfred G. Vanderbilt, the actual possession being postponed until he should arrive at the age of 30 and 35 years, respectively. It is true that his absolute interest would be subject to be defeated by his death prior to his arriving at the age of 35 years; but there was a valid transfer of the property to him, and it was that valid transfer that was taxable under the provision of the statute to which attention has been called. By express provision of this statute, the tax was to be paid out of the property transferred, and I can see no reason why this provision of the act should not be enforced in this case. Upon no contingency could there be either a less or greater tax than if the property had vested actually in Alfred G. Vanderbilt, for the will provided that in case of his death prior to the time at which he would be entitled to receive the property it should go either to his children, if he left any surviving, or to his brothers and sisters who were of the same kin to the testa-

tor. All that was necessary to make this estate now taxable was that there should be a transfer of the estate. In my view there is such a transfer, the legal title vesting in Alfred G. Vanderbilt, the right to possession being merely postponed until the termination of this trust, and such transfer is, I think, taxable.

I think the order of the surrogate should be modified to the extent indicated.

LAUGHLIN, J. (dissenting). I agree with the views expressed by Mr. Justice PATTERSON on the first, second, and third propositions, but I dissent from his discussion of the fourth proposition, and from his construction of section 230 of the tax law as amended by chapter 76 of the Laws of 1899. The construction of that statute given in the prevailing opinion renders the amendment nugatory, as it is the same as that which prevailed prior to the adoption thereof. The collateral inheritance tax law, as it formerly existed, provided that the tax upon contingent remainders should not be payable until the remainders vested in possession. Consequently part of the tax was collectible immediately and the collection of part was postponed until the vesting of the remainders. This system was given a trial, after which the legislature, by the amendment of 1899, in my opinion, intended to enact, and did very clearly prescribe, that all collateral inheritance taxes should be imposed and collected at the same time, and that immediately following the appraisal of the estate. This amendment took effect prior to the death of the testator, and it applies to his will. The legislature has not interfered with the disposition of property by will. It has, however, distinctly provided that where property is transferred, in trust or otherwise, to await the happening of a contingency which is to determine the ultimate right thereto, in such case the share and interest of the property which is to be forfeited to the state as a collateral inheritance tax shall be forthwith ascertained and deducted. To my mind, this intention on the part of the legislature is manifest. The provision is general, and I see no constitutional objection to its enforcement. The legislature has, in effect, said that if property is so devised that the relationship of the ultimate transferee to the testator cannot be definitely determined, at the time of the appraisal of the property for the purpose of imposing the collateral inheritance tax, then a tax shall be presently imposed at the highest rate applicable to any of those whose interests are uncertain or contingent, if such interest then vested in possession. In other words, the amendment of 1899 treats the transfer to the trustee, which takes place at the death of the testator, as the transfer upon which the tax is imposed, and it merely considers those who are contingently entitled as a means of determining the percentage of the tax.