In the Matter of the Appraisal for Taxation of the Estate of
FREDERICK TAYLOR SHERMAN, Deceased.

EUGENE M. TRAVIS, as Comptroller of the State of New York,
Appellant; ARNOLD W. SHERMAN and FREDERICK T. SHER-
MAN, as Executors, etc., Respondents.

Third Department, July 2, 1917.

Tax — transfer tax — amount imposed on estate by Federal
Estate Tax Act of 1916 should not be deducted in assessing State
transfer tax — nature of Federal act of 1916 — said tax not uncon-
stitutional on the ground that it is not in proportion to census —
distinction between tax upon property and tax upon transfer
thereof.

The Federal estate tax imposed by title 2 of the United States Revenue
Act approved September 8, 1916, should not be treated as an expense
of administration in determining the amount of the State transfer tax,
or deducted from the assets of the estate prior to assessing the State
tax.

The tax imposed by said Federal act is upon the transfer of a net estate
and not upon the separate succession to the property of each legatee or
distributee, as was the case under the former act of 1898.

Said Federal act of 1916 is not in contravention of the clause of the Federal
Constitution providing, " no capitation or other direct tax shall be laid
unless in proportion to the census," for the tax is imposed, not upon
the net estate itself, but upon the transfer thereof.

The fact that a tax is to be paid out of property does not render it a tax
on property.

A tax when imposed on the method or privilege of acquisition is a transfer
tax.

Quære, as to whether in determining the amount of the net estate for the
purpose of assessing the Federal tax the sum paid on account of the
State transfer tax should be deducted from the gross estate.

KELLOGG, P. J., and WOODWARD, J., dissented.

APPEAL by Eugene M. Travis, as Comptroller of the State
of New York, from an amended final order of the Surrogate's
Court of the county of Otsego, entered in the office of said
Surrogate's Court on the 26th day of February, 1917, fixing
the transfer tax herein, and also from an antecedent or con-
current order entered in the office of said Surrogate's Court
on the same day.

*Lafayette B. Gleason* [*John B. Gleason* of counsel], for the appellant.

*Jerome S. Seacord,* for the respondents.

LYON, J.:

The sole question presented by this appeal is whether the tax commonly known as the Federal estate tax imposed by title 2 of the United States Revenue Act, approved September 8, 1916 (39 U. S. Stat. at Large, 756, 777 *et seq.*, chap. 463, § 200 *et seq.*), should have been treated as an expense of administration in determining the amount of the State transfer tax and deducted from the assets of the estate prior to assessing the transfer tax.

The order entered upon the report of the county treasurer of Otsego county, acting as appraiser, determining the cash value of the estate and the amount of the State transfer tax to which the estate was liable, did not allow such deduction. Upon appeal to the surrogate of the county the sum of $3,097.26 paid by the executors on account of the Federal tax was deducted and allowed as an expense of administration and said order amended accordingly. From such amended order this appeal has been taken.

The decedent was domiciled in the county of Otsego in this State. He died September 22, 1916, leaving an estate of approximately $235,000. His will was admitted to probate October 2, 1916.

The State Comptroller, appellant, bases his claim that the Federal tax is not entitled to be considered an expense of administration upon three grounds: (1) That it is a tax imposed upon the separate legacies and distributive shares and not upon the estate; (2) that if it be a direct tax it is void; and (3) that the State Tax Law does not contemplate a deduction of the Federal tax in determining the amount of the State transfer tax. (1) The cases mainly relied upon by the appellant to establish the first two propositions are *Knowlton* v. *Moore* (178 U. S. 41) and *Matter of Gihon* (169 N. Y. 443). The Federal inheritance tax under consideration in those two cases was that imposed by the War Revenue Act of June 13, 1898, chapter 448 (30 U. S. Stat. at Large, 448), and differed radically in its provisions from the present

Federal act. In the *Knowlton* case, Mr. Justice WHITE in an opinion of considerable length states the reasons which induced the conclusion by him that the Federal Inheritance Law of June 13, 1898, imposed the tax upon the transfer of the particular legacies or distributive shares, and not upon the passing of the whole amount of the personal estate. A brief reference to that opinion and to certain provisions of the 1916 act will render apparent the distinction. Justice WHITE points out that the heading of the act of 1898 described what is taxed, as not the " estates " of deceased persons, but as " *legacies and distributive shares of personal property.*" After quoting the opening words of section 29 of that act, he says: " Thus collocated, the statute clearly imposes the duty on the particular legacies or distributive shares, and not on the whole personal estate. It does not say that the tax is levied on the personal estate left by the deceased person, but it is imposed on legacies or distributive shares arising from such property."

Title II of the Federal act of 1916, relating to the transfer of the property of a decedent, is entitled " *Estate Tax.*" Section 201 of that act, as it existed September 22, 1916, provided " a tax  *  *  * equal to the following percentages of the value of the net estate, to be determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or non-resident of the United States: One per centum of the amount of such net estate not in excess of $50,000." Then followed a graduated increase of percentage upon increased amounts of net estates up to " Ten per centum of the amount by which such net estate exceeds $5,000,000." In each of the ten instances the percentage is to be computed upon the *net estate.* Referring briefly to other provisions of the act, section 202 provides for the manner in which the value of the gross estate shall be determined; section 203 that the value of the net estate shall be determined in the case of a resident by deducting from the value of the gross estate, " (1) (Certain allowances as hereinafter particularly stated); and (2) An exemption of $50,000." Section 207 provides that the executor shall pay the tax to the collector or deputy collector.

Section 209 provides: " That unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien."

From the foregoing references to the two Federal acts it is apparent that the Federal tax imposed by the act of 1916 is upon the transfer of the net estate, and not upon the separate successions to the property of each legatee or distributee, as was the case under the act of 1898.   Construing the act of 1916 to require placing the Federal tax upon the several legacies and distributive shares would be productive of the grossest inequality of taxation.   For instance, a legatee under a net estate, not in excess of $50,000, would have been required to pay under the act as it existed September 22, 1916, a tax of one per cent, while a legatee of the same amount under a net estate exceeding $5,000,000 would then have been required to pay a tax of ten per cent.   Thus, the percentage and the consequent amount of tax to be paid upon a legacy of any given amount would be based not upon the amount of the legacy, but would depend wholly upon the size of the net estate out of which it was carved.   It can hardly be assumed that Congress intended to enact a law which would lead to such an unequal and unreasonable result.   Concerning such a construction of a statute Justice WHITE says: " The gross inequalities which must inevitably result from the admission of this theory are readily illustrated.   *   *   *   It would thus come to pass that the same person, occupying the same relation, and taking in the same character, two equal sums from two different persons, would pay in the one case more than twice the tax that he would in the other.   *   *   *   We are, therefore, bound to give heed to the rule that where a particular construction of a statute will occasion great inconvenience, or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute.   *   *   *   It may be doubted by some, aside from express constitutional restrictions, whether the taxation by Congress of the property of one person, accompanied with an arbitrary provision that the rate of tax shall be fixed with reference to the sum of the

property of another, thus bringing about the profound inequality which we have noticed, would not transcend the limitations arising from those fundamental conceptions of free government which underlie all constitutional systems." (*Knowlton* v. *Moore, supra,* 76, 77.) The Special Tax Commission of New York State in its report transmitted to the Legislature in January, 1907 (Senate Doc. 1907, vol. 5, No. 11, pp. 12, 13), said of this method of gradation, "reasons of fairness and justice, as well as sound theory, are on the side of the assessment and computation of the tax upon the individual share received," and characterized a scheme of taxation based upon the amount of the estate as " unjust and to be avoided."

(2) As to the contention of the appellant that if the Federal tax is a direct tax, it is void as violative of article 1, section 9, subdivision 4, of the Constitution of the United States providing that " no capitation or other direct tax shall be laid unless in proportion to the census," such contention is undoubtedly well founded. However, the act of 1916 expressly states that the tax is imposed, not upon the net estate, but upon the *transfer* of the net estate. The fact that a tax is to be paid out of property does not render it a tax on property. A tax when imposed on the method or privilege of acquisition is a transfer tax. (*Matter of Vanderbilt,* 172 N. Y. 69.)

The imposition by Congress of a tax upon the transfer of the entire estate is not without precedent. The Federal act of 1864, chapter 173 (13 U. S. Stat. at Large, 223, 285), not only provided for a tax upon individual legacies and distributive shares in personal property, as well as a succession tax upon real estate, but also provided for a probate duty upon the whole estate. Justice WHITE in his opinion in *Knowlton* v. *Moore* (*supra,* 75) states that the whole estate was taxed as such by the probate duty found in the act of 1864. That act was declared to be constitutional in the case of *Scholey* v. *Rew* (23 Wall. 331).

(3) We think the appellant's contention that the State Tax Law relating to taxable transfers (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], art. 10) does not contemplate the deduction of the Federal tax in determining the amount of the State transfer tax, should be upheld. It was held in *Matter of Gihon* (169 N. Y. 443), cited by both parties, that neither the amount of

the State tax, nor the amount of the Federal inheritance tax imposed under the War Revenue Act of 1898, was deductible because each was a tax not upon property but upon succession, that is a tax on a legatee for the privilege of succeeding to property, and was payable out of his legacy, not out of the estate. "The tax is computed, not on the aggregate valuation of the whole estate of the decedent considered as the unit for taxation, but on the value of the separate interests into which it is divided by the will or by the statute laws of the State, and is a charge against each share or interest according to its value, and against the person entitled thereto." (*Matter of Westurn*, 152 N. Y. 93.)

It may be observed that under the Federal act of 1898 it was the amount of the legacy, not of the net estate, as under the Federal act of 1916, that determined the rate of taxation; also that at the times of the decisions of the *Gihon* and *Westurn* cases the State transfer tax was based, not upon the amount of each particular legacy, but upon the property of the testator passing to those not specifically exempted by law. (*Matter of Hoffman*, 143 N. Y. 327.) At the extraordinary session of 1910 the definition of the words "estate" and "property" was changed (Chap. 706, amdg. Tax Law, § 243) to mean "the property or interest therein passing or transferred to individual or corporate legatees * * * and not the property or interest therein of the decedent." (*Matter of Zborowski*, 213 N. Y. 109.) Since that time the State transfer tax has been based upon the amounts passing to the respective transferees.

"The right to take property by devise or descent is the creature of the law, and not a natural right — a privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the States may tax the privilege." (*Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283; *Knowlton* v. *Moore, supra.*) The State transfer tax is imposed not upon the amount which the transferee receives but upon the clear market value of the property at the time of the transfer, and is due and payable at the death of the decedent. It is a tax upon the right to receive an estate or a portion thereof which the State appropriates at the moment of the owner's decease. (Tax Law, § 220,

subd. 8; *Matter of [Josephine] Penfold*, 216 N. Y. 168.) "Tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee." (*United States* v. *Perkins*, 163 U. S. 625.)

The conditions of transfer have been embodied by the State in the Transfer Tax Law. If the Federal government may impose an inheritance tax which is entitled to be deducted from the estate prior to the assessment of the State transfer tax, it has interfered with such conditions, and has diminished the amount which the State has appropriated as a condition of the transfer being had, by the percentage upon the sum appropriated by the Federal government. The State transfer tax will thus have become one not upon the whole estate transmitted but one upon the whole estate less the amount of the Federal tax. This lessening of the transfer tax while not large in the case at bar would aggregate a very considerable sum when applied to all the estates subject to tax within the State. The constitutionality of a Federal act entitled to such a construction and effect might well be doubted.

The Federal act of 1916 limits the subject of taxation to the net estate which is the gross estate less $50,000 and liberal deductions on account of " losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, and from theft, * * * support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

Whether in determining the amount of the net estate for the purpose of assessing the Federal tax, the sum paid on account of the State transfer tax should be deducted from the gross estate is not before us for determination. While under the State act the estate transferred is subject to certain exemptions and limitations (§ 221), no express provision is to be found in the act for the allowance of the sum paid on account of the Federal tax as a disbursement of administration. However, the act does not contain any express pro-

vision for the allowance of commissions and the ordinary necessary expenses of administration, but it has been held that the making of such allowances is necessarily implied from the language of the act. (*Matter of [Josephine] Penfold, supra.*)

It is not every legitimate expenditure by an executor or administrator which is to be deducted as an expense of administration in fixing the sum upon which the transfer tax is to be computed. For instance the transfer tax paid by the administrator in order to effect the transfer of stock in a corporation of another State, which payment is necessary in order to render the stock effective as an asset of the estate, is not to be allowed as an expense of administration in fixing the transfer tax, although it is payable out of the estate upon a final settlement as a disbursement. (*Matter of [William H.] Penfold,* 216 N. Y. 171.)

So the expense of litigation to set aside a will in which the contestants were successful cannot be deducted in fixing the transfer tax although it is a proper disbursement to be allowed upon the final settlement of the estate, the court holding the fact that the contestants were put to expense in contesting the will did not diminish the value of the interest which devolved upon them upon the death of the testator. (*Matter of Westurn, supra.*)

I conclude that the surrogate was in error in amending the original order by allowing the Federal tax to be treated as an expense of administration and deducted from the assets of the estate before computing the State transfer tax.

The order appealed from must, therefore, be reversed and vacated, and the original order restored and affirmed, but without costs, as the question has not before been determined by an appellate court.

All concurred, except KELLOGG, P. J., and WOODWARD, J., dissenting.

Order reversed and vacated, and original order restored and affirmed, without costs.