Judgment reversed and a new trial granted, costs to abide the event.

---

In the Matter of the Appraisal, under the Taxable Transfer Act, of the Estate of KATHARINE J. S. DAVIS, Deceased.

MARY H. S. INGRAHAM, Appellant; COUNTY TREASURER OF ULSTER COUNTY, Respondent.

*Transfer tax — vested remainder — methods of fixing the tax — one method when adopted excludes any other — a determination by the Superintendent of the Insurance Department is final — notice of appeal, what it brings up for review — when interest begins to run upon a tax upon a remainder.*

The will of a testatrix gave an estate in all her property to Julia L. S. Ingraham for life, remainder to her children living at the time of her decease.

*Held,* that a child of Julia L. S. Ingraham, who was in existence when the testatrix died, took a vested remainder, but that the right of possession was suspended during the mother's life.

The provisions of the Revised Statutes relative to the vesting of future estates apply to such interests in personal property.

A surrogate may himself determine the value of an estate for the purposes of the transfer tax, or he may do this by the aid of an appraiser. Where he adopts the latter method and applies, under chapter 399 of the Laws of 1892, to the Superintendent of the Insurance Department to have him determine the value of a future estate, determinable upon the life of the person in being, the determination of the superintendent is final. Either of these methods is complete in itself, and when one has been adopted it precludes any resort to the other.

A notice of appeal brings up for review only those parts of a judgment or decree which are appealed from, and where a statute requires that a notice of appeal

shall state the grounds upon which the appeal is taken, the appellate court can-
not reverse a decree upon grounds not stated in such notice.

Where a transfer tax is to be imposed upon a remainderman, section 5 of chap-
ter 713 of the Laws of 1887 applies, and interest should be charged only from
the date of the death of the life tenant to the date of the payment of the tax
and at the rate of six per cent per annum.

APPEAL by Mary H. S. Ingraham, a legatee under the will of
Katharine J. S. Davis, deceased, from an order and decree of the
Surrogate's Court of the county of Ulster, entered in said Surrogate's
Court on the 8th day of June, 1895, assessing the tax, under the
Inheritance Tax Law, upon the estate of said Katharine J. S. Davis,
except that portion thereof which reverses so much of an order and
decree entered in the proceeding on the 15th day of October, 1894,
in said Surrogate's Court as directed the county treasurer to add
and collect interest on the tax imposed by said order and decree
, upon the interest of said appellant in said estate at the rate of ten
per cent per annum from January 16, 1887, to the date of payment.

*I. H. Maynard,* for the appellant.

*Walter N. Gill,* for the respondent.

MAYHAM, P. J.:

On the 16th day of January, 1887, Mrs. Katharine J. S. Davis,
of Ulster county, died, leaving a last will and testament, by which
she gave to her sister, Mrs. Julia L. S. Ingraham, the mother of the
appellant, all of her real and personal property for her sole and sep-
arate use and benefit for and during the term of her natural life;
and from and immediately after her (Julia L. S. Ingraham's) decease
the testatrix, by her will, gave, devised and bequeathed the same to
the children of Mrs. Ingraham, living at the time of her decease,
share and share alike.

At the time of the death of the testatrix, Julia L. S. Ingraham, the
legatee and devisee of the life estate named in the will of the testa-
trix was still living. On the 2d of February, 1894, Julia L. S. Ingra-
ham died, leaving her surviving Mary H. S. Ingraham, this appellant,
her only child. The testatrix also left her surviving a brother, Har-
rison H. Sudam, who died September 6, 1893, and a niece, Mrs. John
DeWitt, who was a daughter of a sister of testatrix, and who died
in July, 1894.

The will of the testatrix, Mrs. Davis, was duly admitted to probate in Ulster county on the 1st day of February, 1889, in and by which will Julia L. S. Ingraham was named as sole executrix.

After the death of Julia L. S. Ingraham, Mary H. S. Ingraham, her only surviving child, filed a petition in the office of the surrogate of Ulster county asking for the appointment of an appraiser for the purpose of determining the amount of collateral inheritance or taxable transfer tax that should be paid upon the property devised and bequeathed to her under the will of the testatrix, Mrs. Davis. The surrogate thereupon appointed John G. Van Etten as such appraiser, who appraised the value of the property of Katharine J. S. Davis, the testatrix, at $9,550, without making any deduction for commissions of executor and expenses of administration, which appear to have been $263.75, and which, when deducted from the amount of the appraised value of the estate, left the balance of $9,286.25 as the value of the property ultimately passing under the will of the testatrix to the possession of Mary H. S. Ingraham, this appellant.

On the filing of the report of the appraiser in the office of the surrogate, an order was made by the surrogate, in pursuance of chapter 399 of the Laws of 1892, referring it to the Superintendent of the Insurance Department to determine the present value of the interest of Mary H. S. Ingraham as remainderman in the personal property of the estate of Mrs. Davis, the testatrix, appraised at $9,286.25, subject to the interest of a life tenant who was sixty-two years old in January, 1887.

Pursuant to that order and request the Superintendent of the Insurance Department, on the 13th day of October, 1894, filed the following report with the surrogate :

" SIR — In reply to your request of the 11th inst., I give below the present value desired :

| " Name. | Legacy. | P. V. at Date 1, 16, '87. |
|---------|---------|---------------------------|
| " Mary H. S. Ingraham, | Remainder, | $5,226. |

" Very respectfully,

JAMES F. PIERCE,

" *Superintendent.*

" To Hon. JAMES A. BETTS,

" *Surrogate Ulster County.*"

Upon the receipt of this report the surrogate made the following order :

" The surrogate of the county of Ulster having heretofore appointed John G. Van Etten, Esq., appraiser, under and in pursuance of the Transfer Tax Act, to appraise the property of Katharine J. S. Davis, deceased, who died on the 16th day of January, 1888, and the said appraiser having made and filed his report in the office of said surrogate on the fifteenth day of October, 1894, and after reading and filing the report of the Superintendent of Insurance herein, dated Oct. 13th, 1894, it is ordered that the said report be and the same is hereby approved and confirmed, and the cash value of the property of the said Katharine J. S. Davis, deceased, which is subject to the tax imposed by said act, and the tax to which the same is liable, are hereby assessed and fixed as follows :

" Property — personal.

" Person entitled to such property, Mary H. S. Ingraham.

" Cash value — $5,226.00.

" Tax — $261.30.

" And the county treasurer of Ulster county, pursuant to statute, will add interest at the rate of ten per cent per annum to the amount of said tax from January 16th, 1887, to the date of payment.

" JAMES A. BETTS, *Surrogate.*"

This decree was entered on the 15th day of October, 1894. On the 11th of December, 1894, Mary H. S. Ingraham appealed to the surrogate from such decree and incorporated in the notice of appeal therefrom as follows : " From that portion of said decree which directs the county treasurer of Ulster county to add interest at the rate of ten per cent per annum to the amount of said tax from January 16, 1887, to the date of payment ; and the grounds upon which this appeal is taken are, that the interest is not chargeable or allowable on the amount of said tax at the rate of ten per cent per annum from January 16, 1887, or from any other date to the date of payment, but that interest is allowable and chargeable upon said tax, if at all, from the date of the death of Julia L. S. Ingraham, which occurred in or about the month of February, 1894, and only at the rate of six per cent from that date."

On that appeal the surrogate, on the 8th day of June, 1895, made

a decree in and by which, after reciting certain alleged facts, he " ordered, adjudged and decreed that the fair and clear market value of the contingent remainder of the estate devised to said Mary H. S. Ingraham by the decedent, Katharine J. S. Davis, could not be ascertained at the time of the death of the testatrix, but first became ascertainable after the death of the life tenant, Julia L. S. Ingraham, on February 2d, 1894.

" That the contingency annexed to said estate or remainder affected the taxable character of the succession to the same, as the testatrix at her death left a brother surviving, who might in the course of events take such remainder, or a portion thereof, and in his hands the same would not be taxable.

" That the decree made herein by the surrogate of Ulster county, and entered in his office on the 15th day of October, 1894, assessing, fixing and determining the amount of the transfer tax to be paid by Mary H. S. Ingraham upon the property or estate received by her under the will of Katharine J. S. Davis, deceased, so far as said decree fixes the cash value of the estate or property received by the said Mary H. S. Ingraham, under the will of the said decedent, Katharine J. S. Davis, deceased, so far as said decree fixes the cash value of the estate or property received by said Mary H. S. Ingraham, under the will of the said decedent, Katharine J. S. Davis, and the amount of transfer tax to be paid thereon, and so far as the said decree directs the county treasurer of Ulster county to add and collect interest on said tax at ten per cent per annum from January 16, 1887, to the date of payment, be and the same hereby is reversed.

" That the estate or property which came to the possession of the said Mary H. S. Ingraham on the death of her mother, Julia L. S. Ingraham, February 2, 1894, under the provisions of the will of said Katharine J. S. Davis, deceased, consisted of personal property, the cash value of which is hereby assessed, fixed and determined to be the sum of $9,286.25, and the transfer tax thereon is hereby assessed, fixed and determined to be the sum of $464.31, and that the said tax accrued on the 2d of February, 1894. And the county treasurer of Ulster county will add and collect interest on said tax at six per centum per annum from the accrual thereof to the time of payment. And if such tax is not paid within eighteen months

from the time when the same accrued, the said county treasurer will charge and collect interest thereon at the rate of ten per centum per annum from the time when said tax accrued to the time of payment."

From this decree the appellant appeals to this court and from every part and decree " except that portion which reverses so much of the order and decree heretofore entered in this matter on the 15th day of October, 1894, as directed the county treasurer of Ulster county to add and collect interest on the tax of $261.30, imposed by said order and decree upon the interest of this applicant in said estate under said will at the rate of ten per centum per annum, from January 16th, 1887, to the date of payment."

Perhaps the first question which presents itself upon this appeal is as to the time of the vesting of the title or interest of the appellant in the estate of the testatrix under the provisions of her will, and as to whether the appellant, on the death of the testatrix, took a vested or contingent interest in the estate. By section 13 of article 1 of title 2 of chapter 1 of part 2 of the Revised Statutes (Banks & Bros. 8th ed.), volume 4, page 2432 (1 R. S. 723), it is provided as follows : " Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom or the event upon which they are limited to take effect remains uncertain." It is true that this provision of the Revised Statutes relates to real estate. But by section 2 of title 4, page 2516 of the same volume of the Revised Statutes (1 R. S. 773), the same rule is made applicable to personal property. That section reads as follows : " In all * * * respects limitations of future or contingent interests in personal property shall be subject to the same rules prescribed in the first chapter of this act in relation to future estates in lands." It will be seen that, by these provisions of the statute, that as the appellant, who was remainderman under the will, was in existence at the time of the death of the testatrix, she would have taken her interest immediately but for the intervening life estate of her mother, Julia L. S. Ingraham. Her estate was, therefore, a vested remainder with the right of possession suspended during the life of her mother.

The value of that estate at the time the title vested, was fixed under the order of the surrogate by the Superintendent of Insurance at the sum of $5,226, and upon that adjustment the succession tax was adjusted under the provisions of the statute at $261.30.

By the provisions of section 13 of chapter 399 of the Laws of 1892, " The Superintendent of Insurance shall, on the application of any surrogate, determine the value of any such future or contingent estates, income or interest, limited, contingent, dependent or determinable upon the life or lives of persons in being upon the facts contained in any such appraiser's report, and certify the same to the surrogate, and his certificate shall be conclusive evidence that the method of computation adopted therein is correct."

The statute requires that notice of the proceedings for the ascertainment of such tax and the appraisal of such property be given and provides that witnesses may be examined on the part of any party interested in such property or the tax that may be assessed on the same.

No objection or exception to the report of the appraiser was taken by the county treasurer or the appellant, and no objection was made to the tax imposed, except that the appellant objected to the rate of interest which the county treasurer was directed to collect upon the amount of the tax assessed by the surrogate. The appellant now insists that the proceedings by and before the surrogate in fixing the amount of this tax were *res adjudicata*, and that the surrogate had no jurisdiction or authority, in deciding the appeal from that part of his order fixing the rate of interest on the tax, or to reopen the question of the value of the inheritance and make a new valuation of the estate passing to her liable to taxation.

In answer to this position of the appellant, it is insisted "that the surrogate may so determine the cash value of all such estates and the amount of tax to which the same are liable without appointing an appraiser," and that under that provision of section 13 above referred to the surrogate was authorized, on the appeal taken to him, to determine the value of such estate and estimate the amount of the tax.

I do not think that that section of the act of 1892 will bear any such construction. Two methods of establishing the value of the inheritance and fixing the tax are provided in that section. One by the aid of an appraiser and the other by the surrogate without

such aid. Either method is complete in itself, and when one has been adopted it precludes any resort to the other. Any other construction would render the dual methods fixed by the statute inoperative and meaningless; and, unless the appraisal fixed by the appraiser, and the value of the estate of the appellant as fixed by the Superintendent of Insurance, and the assessment of the tax made thereon by the surrogate, were in all things reversed and set aside by the surrogate in his order, made on the appeal to him by this appellant, his power to fix the amount of the inheritance had been transferred to the Superintendent of Insurance and could not be resumed by him, and his assessment made on the report of such superintendent could not be revoked.

This brings us to the consideration of the nature and effect of the appellant's appeal to the surrogate. It is claimed by the appellant that that appeal brought before the surrogate for review only the question of interest, which by the order appealed from the county treasurer was directed to collect upon the tax as fixed by the surrogate, on the report of the Superintendent of Insurance, based upon the value of the inheritance as fixed by the appraiser. Section 13 of chapter 399 of the Laws of 1892, which authorizes such an appeal, requires that the notice of appeal "shall state the grounds upon which the appeal is taken." As we have seen, the notice of appeal states as follows: "And the grounds upon which this appeal is taken are, that the interest is not chargeable or allowable on the amount of said tax at the rate of ten per cent per annum from January 16, 1887, or from any other date to the date of payment, but the interest is allowable and chargeable upon said tax, if at all, from the date of the death of Julia L. S. Ingraham, which occurred in or about the month of February, 1894, and only at the rate of six per cent from that date."

The appeal would have been ineffectual if it had not, as required by that section, stated the grounds upon which it was brought, and as the question of interest was the only one brought up for review, we do not see any authority in the surrogate to review and reverse that part of the order, as to which no appeal was taken, especially as the report of the Superintendent of Insurance is by statute made conclusive, as to the methods adopted by the superintendent in fixing the value of the remainder to which the appellant is entitled.

So far as we know the rule is universal, that only the parts of a judgment or decree which are appealed from can be reviewed on appeal. In *Robertson* v. *Bullions* (11 N. Y. [1 Kern.] 246) it was held that " This court can only review those parts of the decree from which an appeal is taken," and to the same effect is *Kelsey* v. *Western* (2 N. Y. [2 Comst.] 500).

This is a statutory rule, and seems not to have been departed from. That part of the decree which fixes the amount of the inheritance, or the tax which followed from the adjustment at that amount, cannot be reviewed, as neither of those amounts are specified in the grounds of appeal in the notice. As the statute requires, as we have seen, the notice of appeal to state the ground upon which it is taken, the order cannot be reversed upon grounds not stated. In *Avery* v. *Woodbeck* (62 Barb. 557), when, on an appeal from a judgment rendered in a Justice's Court, section 353 of the Code of Procedure required that a notice of appeal be served " stating the grounds upon which the appeal is founded," and the appellate court was asked to reverse upon grounds not stated in the notice of appeal, POTTER, J., in his opinion, after quoting the language of the section of the Code, puts these significant questions: "What is the use of this provision? What was intended by it? Does it mean nothing? If it means something, what does it mean? The language is imperative. Can the court hold that, notwithstanding this positive language, this specific requirement is useless; that the court can reverse for grounds not stated, as well as upon those that are; that it is a nugatory provision; that the Supreme Court may reverse or affirm the judgment upon other grounds than those complained of."

And the learned judge, after putting these questions, which was one of his forceful ways of illustrating a proposition, holds that the judgment can only be reversed upon the grounds of error alleged in the notice of appeal. To the same effect is *Bush* v. *Dennison* (14 How. Pr. 307); *Lee* v. *Schmidt* (6 Abb. Pr. 183); *Fowler* v. *Milliman* (2 Hun, 408); *Slingerland* v. *Bronk* (47 How. Pr. 408). The rule laid down in these cases is not changed by section 2587 of the Code of Civil Procedure.

Within these authorities we are of the opinion that the learned surrogate erred in assuming to review and reverse his order on

grounds not stated in the notice of appeal, and as to a part of the order, from which no appeal had been taken either by the appellant or the county officer representing the people. In doing so the learned surrogate acted without authority, and in direct opposition to the certificate of the Superintendent of Insurance, whose certificate is, by statute, made conclusive evidence; and also, so far as appears by the case, without any hearing on the part of the appellant whose tax was nearly doubled by the surrogate's determination.

The remaining question is as to whether the surrogate erred in his first order in and by which he directed the county treasurer to " add interest at the rate of ten per cent per annum to the amount of said tax from January 16th, 1887, to the date of payment."

If we are right in holding that the title to this property vested under the will in the appellant, at the death of the testatrix, then the only remaining contingency was as to the time of its vesting in possession, and if the appellant had not survived her mother the possession after the termination of the life estate would pass under the will of the appellant, or, if she died intestate, to her personal representatives or next of kin, and could in no event pass to the surviving brothers and sisters of the testatrix; she was, therefore, on the death of the testatrix the complete and indefeasible owner of the estate in remainder bequeathed to her, the value of which, as we have seen, was fixed by the certificate of the Superintendent of Insurance. Did the postponement of possession, by reason of the existence of an intervening life estate, postpone the payment of the tax ?

By the provisions of section 2 of chapter 483 of the Laws of 1885 the value of the life estate bequeathed to Julia L. S. Ingraham was, at the death of the testatrix, carved out of the *corpus* of the estate, and was exempted from the inheritance tax imposed by that act; the balance of the estate which was bequeathed to Mary H. S. Ingraham, this appellant, passed to her as a vested remainder, and the value of her interest was by that section required to be immediately appraised.

The language of that section on that subject is as follows : " The property so passing shall be appraised immediately after the death of the decedent  *  *  *  in the manner hereinafter provided, and

after deducting therefrom the value of said life estate or term of years, the tax prescribed by this act on the remainder shall be immediately due and payable to the treasurer of the proper county, * * * and together with the interest thereon shall be and remain a lien on said property until the same is paid." The same section makes provision for postponement of the payment of the tax by the remainderman until the possession or enjoyment is obtained.

Section 4 of chapter 713 of the Laws of 1887 imposes by way of penalty interest at the rate of ten per cent per annum from the time the tax accrued, if not paid within eighteen months, and provides that all tax, unless otherwise provided, shall be due and payable at the death of the decedent. Section 5 of this act provides that where by reason of unavoidable delay the estate of the decedent, or any part thereof, cannot be settled within eighteen months from the death of the decedent, interest at six per cent shall be chargeable after the expiration of eighteen months from the death of the decedent. It is insisted by the learned counsel for the appellant that under the circumstances of this case the payment of this tax was postponed until the death of the legatee of the life estate, on February 2, 1894, and that it was error to impose the penalty for failure to pay the tax of the ten per cent rate of interest from the death of the decedent, and he cites *Matter of Curtis* (142 N. Y. 219) and *Matter of Roosevelt* (143 id. 120) in support of that contention. In *Matter of Curtis* (*supra*) it was held that " if that technical vesting be admitted, what so passed was rather a theoretical possibility than a tangible reality, for the life estate was in the trustee of the daughters carrying the whole beneficial use; there was no power over it in the contingent remaindermen, and the nominal and technical fee might never become a taxable estate.

" It was never intended by the law to tax a theory having no real substance behind it. * * * Where it is only in the chance of uncertain events that the beneficial interests will finally alight where they will be taxable at all, a delay until the contingency is solved is both just and necessary. This was substantially the view taken by the General Term, and it seems to me to be clearly right and just. It protects and preserves the interests of the devisees and legatees on the one hand and the right of the State on the other."

The reasoning of that case, as well as the result reached in it, would

seem to postpone the time of payment of the tax in the case at bar until it vested in the residuary legatee in possession on the death of her mother. It is true, as we have seen, that the title passed at the death of the testatrix, but the beneficial use was postponed until the termination of the life estate.

As it was all personal property, subject to the control of the life tenant, who was the executrix, the whole estate might have been squandered before the remainderman could reduce it to possession; and to compel the remainderman to pay the penalty of interest at ten per cent for omitting to pay a tax on property, to the use of which she was not entitled, would be giving a harsh construction to the statute which could not have been contemplated by the Legislature.

In *The Matter of Roosevelt* (*supra*) the question was whether the payment of the tax by the remainderman must be made on the death of the testator, or could be postponed until the property vested in him on the death of the person having a life estate. BARTLETT, J., says: "It is not to be assumed that the Legislature intended to compel the citizen to pay a tax upon an interest he may never receive, and the reasonable construction of this statute leads to no such unjust result."

In *The Matter of Hoffman* (143 N. Y. 335), FINCH, J., in discussing the question of the time at which the inheritance tax may be demanded, says: "The State will get its tax when the legatees get their property."

Within the liberal construction given by the Court of Appeals to the rights of remaindermen under the provisions of the Taxable Transfer Act, we are forced to the conclusion that the payment of the tax for which the appellant is liable was postponed until the death of the life tenant, when she became entitled to the possession, and that the learned surrogate erred in reversing the order and decree of October 15, 1894, whereby the cash value of the inheritance of the appellant was fixed at $5,226, and the amount of the tax on the same at $261.30, and in re-estimating the value of the inheritance at $9,286.25, and in assessing a tax based upon that valuation, and that the order and decree appealed from should be wholly reversed.

The order and decree of the surrogate of October 15, 1894, should be modified by striking out of it the provision that the

county treasurer should add interest at the rate of ten per cent per annum to the amount of the tax, from January 15, 1887, to the date of payment, and inserting in lieu thereof a provision for interest at the rate of six per cent from February 2, 1894, the date of the death of the life tenant, to the date of payment, and, as so modified, that order or decree should be affirmed, with costs and disbursements of this appeal to the appellant.

PUTNAM and HERRICK, JJ., concurred.

Order of surrogate reversed and order of October 15, 1894, modified as per opinion, and, as modified, affirmed, with costs and disbursements to appellant.