In the Matter of the Transfer Tax upon the Estate of CHARLES H. FLETCHER, Deceased.

CENTAUR COMPANY, Appellant; STATE TAX COMMISSION, Respondent.

First Department, December 31, 1926.

Taxation — transfer tax — decedent's contract with appellant, as its president, provided for salary equal to twenty-two per cent of profits in any one year, subject to withdrawal by decedent — contract provided also that when decedent ceased to be president or upon his death any sum remaining unpaid could not be withdrawn by him or his heirs — amount remaining undrawn at decedent's death was not transferred to appellant, within meaning of Tax Law, and was not subject to transfer tax on that basis — pro forma order determined that said undrawn salary was part of taxable estate of decedent, appraising value of transfers to beneficiaries — proceedings were reopened and all parties, including appellant, appeared and pro forma order was made same as before — executors appealed from pro forma order but State Tax Commission did not appeal — surrogate went beyond jurisdiction in deciding on that appeal that appellant was liable — that question was not presented on appeal from pro forma order — pro forma order finding no transfer to appellant was res adjudicata, no appeal having been taken on that question — order granted by surrogate on appeal from pro forma order, determining that transfer was made to appellant, is erroneous — subsequent payment of undrawn salary to executors of decedent immaterial.

The salary of the decedent remaining undrawn from the treasury of the company of which he was president was not taxable on the basis of a transfer to the company, for it appears that the contract of employment between the decedent and his company provided that he should be entitled in each year to a sum equal to twenty-two per cent of the net profits for each year while he held the office of president, and provided also that upon his ceasing to be president or upon his death, any sum remaining undrawn from the treasury of the corporation would not be a liability against the company in his favor or in favor of his heirs, and the contract released the company from any liability for undrawn salary.

The effect of the agreement was not to transfer property belonging to the decedent to the corporation in anticipation of death, but was simply a contract for salary up to the amount actually withdrawn by the decedent, and limited to twenty-two per cent of the net profits for any one year, and, therefore, until withdrawn, the salary did not become the property of the decedent.

The first *pro forma* order determined that the undrawn salary was a part of the estate of the decedent and appraised the value of the transfer thereof to the beneficiaries. The proceedings were subsequently reopened upon the request of the State Tax Commission, and again it was determined that the undrawn salary had passed to the estate of the decedent and was taxable as such. The executors appealed from that order to the surrogate on the ground that the undrawn salary did not pass to the estate of the decedent and become subject to the transfer tax, but the State Tax Commission did not appeal from that order at all, and, therefore, the question was not raised that the undrawn salary constituted a transfer to the corporation, the appellant herein. The appellant herein was not notified of the appeal from said *pro forma* order. Under the circumstances, therefore, the surrogate exceeded his jurisdiction in going beyond the question raised by the notice of appeal and in deciding that the undrawn salary had passed to the appellant herein and should be taxable on that basis, for, the *pro forma* order not having been appealed from by the State Tax Commission on the ground that the undrawn salary had passed to the appellant, was *res adjudicata* on that question.

The fact that the corporation did, after the death of the decedent, voluntarily pay to the executors of the estate the amount of the undrawn salary, does not change the rule.

APPEAL by the Centaur Company from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 12th day of June, 1926, denying the appeal of said Centaur Company from a *pro forma* order dated December 24, 1925. Said *pro forma* order assessed a transfer tax of $17,110.81 against the said appellant, the said appellant also bringing up for review the said last-mentioned *pro forma* order.

*Lewis L. Delafield* of counsel [*Hawkins, Delafield & Longfellow,* attorneys], for the appellant.

*Charles A. Curtin* of counsel [*A. Welles Stump* with him on the brief], for the respondent.

MERRELL, J. Charles H. Fletcher, the decedent, died on April 9, 1922, leaving a last will and testament wherein executors were named. Said will was duly admitted to probate in the Surrogate's Court of the county of New York, and subsequently transfer tax proceedings were instituted upon the estate of said decedent, and a transfer tax appraiser appointed therein. Under the will of the decedent the bulk of his estate passed absolutely or in trust to the widow of the testator or to his descendants. In the petition for the appointment of an appraiser in transfer tax proceedings no claim was made that the appellant herein was in anywise interested in the said estate or entitled to notice of transfer tax pro-

ceedings. By order of the surrogate the transfer tax appraiser was appointed to fix " the fair market value of the property which was of the above named decedent, to declare the value of such interest or interests therein as may be subject to the payment of the transfer tax, to declare exempt from such tax such interest or interests as he may find to be exempt, and to do such other thing or things in the premises as he may be authorized to do, by virtue of his office, under the said provision of law." From the proofs submitted to the transfer tax appraiser it appeared that on November 24, 1917, the Centaur Company entered into a contract in writing with the decedent whereby the latter was employed as the president of said company for the years 1918 to 1922, inclusive. The written contract provided that Mr. Fletcher, as president, should receive an annual salary " in each year equal to twenty-two (22) per cent of the net income or profits of said company for each of said years, respectively." It was further therein provided that said Fletcher was entitled to draw his said share of said profits in monthly payments in each year. Fletcher was the inventor of the formula for the well-known proprietary medicine known as " Fletcher's Castoria." The business of the Centaur Company was the compounding and sale of said proprietary medicine under the formula invented by Fletcher. Enormous profits were realized from the manufacture and sale of said compound. The record on appeal discloses that Fletcher had, for many years prior to the making of the contract above mentioned, been under contract with the Centaur Company holding the position of president of the company under like compensation of twenty-two per cent of the net profits, and that out of eight of the eleven years from 1912 to 1922, inclusive, his compensation had exceeded $300,000 per annum; that of the remaining three years of said period, in one year he received $263,000, and in the year 1921 he received as, compensation the sum of $135,622.58; that for the five years immediately preceding the making of the contract involved upon this appeal Fletcher's salary had never fallen below $310,000 per annum.

In consideration of the employment of the decedent by the Centaur Company under so lucrative a salary, Fletcher, on his part, covenanted with the Centaur Company as follows:

" Second. Charles H. Fletcher expressly covenants and agrees that in the event of his death, or upon his ceasing to be President of said Company, this contract shall thereupon be null and void, and said Fletcher hereby covenants that he, his heirs, executors, personal representatives and assigns shall at the time of his death or upon his ceasing to be said President, be entitled to nothing whatsoever from said The Centaur Company by virtue thereof. He further

hereby relinquishes, releases and holds harmless said Company for any share of said profits which he may not have drawn at the time of his death or to the time of his ceasing to be said President, and which he would have been entitled to draw had he lived or continued to act as President. Said Fletcher hereby expressly waives the right to any accounting by his heirs, executors, personal representatives and assigns, and hereby covenants that they shall demand nothing from said Company, as nothing will be due him hereunder or otherwise in either of said events, and that they shall demand no right to examine the books or accounts of the said Company in either of said events, either at law or in equity. Any sum which may be paid to the estate of said Charles H. Fletcher or his personal representatives by said Company will be paid as matter of grace and not of right by virtue of these presents.

" *Third.* Said Fletcher hereby covenants to give his time and ability to the duties of his office as President of The Centaur Company as may be required to diligently prosecute its business pursuant to the By-Laws of said Company and the direction of its Board and executive committee."

The record also discloses that for the years 1918 to 1922, twenty-two per cent of the net profits of the Centaur Company which the decedent might have drawn amounted to $1,233,397.64. This entire amount to which the decedent was entitled was not drawn by him, and at the time of his death there remained undrawn and still in the hands of the Centaur Company of the compensation which Mr. Fletcher might have drawn a balance of $254,510.17. The surrogate, in his opinion, has held that this sum, not having been drawn by the decedent prior to his death, passed to the Centaur Company and was taxable under subdivision 4 of section 220 of the law with relation to taxable transfers,* and that by the omission to claim what was due the decedent, said sum upon his death became the property of the Centaur Company and was a transfer intended to take effect in possession and enjoyment on the death of the decedent, and that said transfer did take effect upon such happening.

We are unable to agree with the learned surrogate in holding that the omission of the decedent to draw the moneys which he might have drawn as compensation for his services as president of the Centaur Company effected any transfer thereof to said company. The said sum was never drawn by decedent. Not having been drawn by the decedent before his death, it never became his property and he could not transfer it. In our opinion there

---

* See Tax Law, § 220, subd. 4, as amd. by Laws of 1922, chap. 430; since renum. subd. 2 and amd. by Laws of 1925, chap. 143.— [Rep.

was no gift from the decedent to the Centaur Company as the result of the decedent's failure to draw the compensation which he might have drawn under his contract with the company. It is inconceivable that at the time the employment contract was entered into between the decedent and the Centaur Company the decedent had in mind the conditions which existed at the time of his death. At most, the agreement was for compensation which he was to receive, not exceeding twenty-two per cent of the net profits of the Centaur Company during the years covered by the contract. If the decedent drew less than the twenty-two per cent in any year, then the amount which he did draw measured his compensation. He might have resigned as president of the Centaur Company at any time prior to his death, and at such time any undrawn compensation under the contract would have been retained by the Centaur Company. We do not think it could be said under such circumstances that there was any taxable transfer to the Centaur Company of the amount undrawn by Fletcher. We can see no evidence of any intent on the part of the testator to make a gift to the Centaur Company arising from his failure to draw all of the moneys which he might have drawn. Certainly at the time the contract was executed between the decedent and the company there was no thought of any future " bounty or benefaction " in the mind of Mr. Fletcher. At that time the company was not indebted to him. By the agreement which he made he was waiving no present right. The contract provided that he might withdraw at the end of every month such profits as the company had earned, not exceeding twenty-two per cent thereof, as his compensation. It was not until his death several years later that the Centaur Company benefited by reason of the decedent's waiver of his right to draw the full amount to which he was entitled. We can see no intent on the part of Fletcher, in entering into the agreement to waive any undrawn part of his percentage, to donate the same to the company. There certainly was no testamentary intent in the mind of the decedent at the time of entering into such contract. Under the terms of the contract such waiver might become operative prior to the death of Mr. Fletcher upon his retirement from the presidency of the company. We are of the opinion that the waiver provision of the contract was entirely executory. It is very evident that in making the contract the parties understood that for his services the decedent would receive an enormous sum of money annually upon his concession that he would be entitled to receive only such part of the twenty-two per cent of the profits as he should actually draw in his lifetime or while he was serving as president of the

Centaur Company within the years covered by the contract. It might well be that in the absence of this rather peculiar provision of the contract the company would not have employed Fletcher as its president. If and so long as Fletcher drew his full twenty-two per cent of the net profits as salary the so-called waiver amounted to nothing. The agreement on Fletcher's part to waive any claim for undrawn salary was ample consideration for the agreement on the company's part to pay him so enormous a salary. Furthermore, we are unable to see when the alleged taxable transfer from the decedent to the Centaur Company became effective. It must be borne in mind that under the terms of the agreement the decedent was not to receive twenty-two per cent of the profits as his salary, *but only such part thereof as he might draw during his lifetime or while he remained the president of the company*. No part of the undrawn salary ever belonged to the decedent. In view of such fact, we are unable to see how there could be any transfer of the undrawn salary from Fletcher to the company. Certainly there was no intent that any such transfer as is claimed occurred at the time of the making of the contract. If it be said that the transfer took place at the time the decedent omitted to draw the full amount of his possible compensation, then certainly such transfers cannot be said to be transfers intended to take effect in possession and enjoyment upon the decedent's death. We find no evidence that there was any transfer made by the decedent in contemplation of death. We see nothing testamentary whatever in the character of the instrument whereby it is claimed the transfer occurred. The failure of the decedent to draw the full amount which he might have drawn prior to his death was not an act of bounty or benevolence on his part. The provisions of the contract whereby the decedent, for himself and in behalf of his estate, waived all claims to undrawn profits, were clearly based upon consideration of his enployment as president of the Centaur Company at the enormous salary mentioned. We think in no event that there was a transfer of the property of the decedent taxable under the laws of this State.

Aside from the power of the surrogate to impose a tax upon the undrawn compensation of the decedent, we are of the opinion that the *pro forma* order of the surrogate of December 24, 1925, assessing a transfer tax of $17,110.81 against the Centaur Company and the order denying the appeal of the Centaur Company therefrom are void and must be reversed upon the ground that by a prior *pro forma* order of the Surrogate's Court, from which no appeal was taken by the State Tax Commission, it was adjudicated that the amount of the undrawn compensation to the decedent

passed as a part of his taxable estate to the beneficiaries under his will, and under the terms of which first *pro forma* order made in the taxable transfer tax proceedings had herein the tax upon said sum was assessed against the several beneficiaries under the decedent's said will. In the taxable transfer proceedings as originally instituted the Centaur Company was not a party, but on March 2, 1923, the State Tax Commission, by Adolph C. Kiendl, the transfer tax appraiser, wrote to the Centaur Company that the State Tax Commission claimed that under the contract between the Centaur Company and Fletcher there was a transfer by Fletcher to the Centaur Company of the said sum of undrawn salary amounting to $254,510.17, and that in the opinion of the attorney of the State Tax Commission such transfer might be taxable. It was suggested in such letter that the Centaur Company refer the matter to its counsel, and thereupon, on April 27, 1923, the Centaur Company appeared in the proceedings by its attorneys and shortly thereafter requested the tax appraiser to reopen the proceedings. Pursuant to such request the proceedings were reopened and a hearing held by the appraiser on May 21, 1923, at which the State Tax Commission, the executors of the Fletcher estate, and the Centaur Company each appeared by counsel. Thus, with all parties before the appraiser, there was presented the question as to whether, under the conceded facts, there was any transfer subject to taxation, and, if so, to whom the transfer was made. Had the appraiser determined that the facts did not show that there was any transfer of said fund subject to tax, then, manifestly, there would have been no reason for further continuance of the proceeding, but if it should be determined in the proceedings that there was a transfer subject to tax, then the question would arise as to whom said transfer was made creating a liability to pay the tax. It was a matter of importance to the State Tax Commission that it be determined whether the transfer was to the beneficiaries under the decedent's will, or whether the transfer was to the Centaur Company. If to the former, the amount of the tax assessable would be small. If the transfer was to the Centaur Company, it being a stranger, the tax would be at the highest rate prescribed by law. These matters were presented to and argued before the transfer tax appraiser by counsel for the respective parties. A brief was filed by counsel for the Centaur Company to support its contention that there was no taxable transfer of the fund in question, or, if there was such transfer, then the Fletcher estate alone was subject to the tax. Subsequently and on April 9, 1924, the appraiser made his report wherein he included the said sum of $254,510.17 as a part of the taxable estate

First Department, December, 1926.                [Vol. 219

of the defendant, appraising the value of the transfer to the bene-
ficiaries under the will of Charles H. Fletcher, deceased.   Following
the report of the appraiser and on September 10, 1924, the usual
*pro forma* order was entered assessing the tax and including the
said sum of $254,510.17 as a part of the estate of decedent subject
to the imposition of a transfer tax and assessing the tax against
the several beneficiaries under said will.   An appeal was taken
to the said surrogate from said *pro forma* order of the surrogate
by the executors of the last will and testament of Charles H.
Fletcher, deceased.   No appeal was taken from said order by the
State Tax Commission or by the Centaur Company, the other
parties to the proceeding.   The appeal of the executors from said
*pro forma* order was upon the following grounds: " 1.  That said
appraiser in and by his report erroneously and illegally computed
the amount of the gross estate of this decedent by reason of the
fact that the said appraiser included therein the sum of $254,510.17,
which amount was not a part of the decedent's estate at the date
of his death but was in fact received by the estate subsequent to
the date of the decedent's death as a gift and as such gift it is not
subject to a transfer tax, under the laws of the State of New York."

Thus it will be seen that the only ground upon which the
executors appealed was that as between the executors representing
the Fletcher estate on the one hand and the State Tax Commission
on the other, said estate was not subject to any tax.   No other
question, save the liability of the Fletcher estate to pay such tax,
was presented to the surrogate upon such appeal.   The notice of
appeal did not involve the question as between the State Tax
Commission and the Centaur Company that the Centaur Company
had received any transfer of property subject to the payment of
any tax.   The notice of appeal of the executors was alone addressed
to the State Tax Commission and to the clerk of the Surrogate's
Court.   Neither the Centaur Company nor its attorneys received
any notice thereof.   It is the contention of the appellant herein
that the *pro forma* order of the surrogate of September 10, 1924,
adjudicated that the liability for said tax was upon the Fletcher
estate, and that by such *pro forma* order the surrogate found that
no liability for such tax rested upon the Centaur Company.   No
appeal was taken from the said *pro forma* order by the State Tax
Commission, although, as before suggested, the State would have
received a far greater amount had it been determined that the
Centaur Company instead of the estate had received the transfer.
The State Tax Commission, representing the State, was, therefore,
vitally interested in said order and took no steps to review the
same.   It is the contention of the Centaur Company upon this

appeal that the *pro forma* order constituted a binding adjudication, and that as between the State Tax Commission, the Fletcher estate, and the appellant, the latter, by such adjudication, was absolved of all liability to pay the tax. The appeal of the Fletcher estate from the *pro forma* order was presented to the surrogate by counsel for the State Tax Commission and by counsel for the estate. Neither the Centaur Company nor its attorneys received any notice, nor did they participate in the argument of said appeal. The surrogate held upon such appeal, entirely disregarding the ground upon which such appeal had been taken, that there was a taxable transfer of the fund in question, and that the Centaur Company, who was not a party to the appeal, was liable to pay the tax, and that the Fletcher estate was absolved therefrom. The appellant urges, with force, that the surrogate, in determining said appeal, was confined alone to the question raised by the notice of appeal served by the executors of the Fletcher estate, whether the said estate was liable to pay any tax upon the amount of said undrawn compensation, and that the surrogate, in holding that there was a transfer to the Centaur Company of the undrawn compensation aforesaid, exceeded his jurisdiction, and had essayed to determine a question not before him. The learned surrogate, in sustaining the executors' appeal and in holding that the Centaur Company was subject to the tax, delivered an opinion wherein reference was made to the fact that the Centaur Company was not a party to the appeal, but, nevertheless, that the transfer was a taxable one, and that the liability to pay the tax rested upon the Centaur Company and not upon the estate of the decedent. Upon such opinion an order was entered by the learned surrogate on January 20, 1925, sustaining the appeal of the said executors upon the ground that the appraiser had improperly included in the assets taxable to the beneficiaries under the will the said sum of $254,510.17, the said order also providing that the report of the appraiser be remitted to him for reconsideration in accordance with the opinion of the surrogate. The matter was remitted to the appraiser and a supplemental report was made reciting the appearance of all of the parties and finding that the employment contract between the Centaur Company and the decedent constituted a gift to the Centaur Company of the said unpaid balance which was taxable to the Centaur Company. Thereupon a second *pro forma* order was entered by the surrogate of New York county on December 24, 1925, holding the Centaur Company liable for tax as the recipient of a gift from the decedent to the extent of the unpaid salary aforesaid and, since the said Centaur Company was a stranger to the blood of the decedent, a tax of $17,110.81 was

imposed. From said *pro forma* order an appeal was taken to the surrogate upon the following grounds:

"*First.* That the determination in said order of December 24, 1925, that property was transferred from the decedent to The Centaur Company, and the assessment by said order of a tax upon such transfer, are contrary to a binding determination in an order of this Court in these proceedings, dated September 10, 1924, and entered September 11, 1924, that there was no taxable transfer from the decedent to The Centaur Company.

"*Second.* That there was no taxable transfer from the decedent to The Centaur Company."

The notice of such appeal was given to the attorney of the State Tax Commission, the attorneys of the executors of the estate of said decedent, and to the clerk of the Surrogate's Court. Such appeal resulted in the surrogate adhering to his opinion and holding the appellant subject to the tax. From the order of the surrogate denying said appeal the present appeal is taken to this court, the appellant also seeking to review the *pro forma* order entered by the surrogate on December 24, 1925.

We are of the opinion, as before stated, that there was no transfer to the Centaur Company under the facts presented rendering said company liable to pay the tax imposed by the order of the learned surrogate. We are, furthermore, of the opinion that the *pro forma* order entered on September 10, 1924, constituted a binding adjudication as between the State Tax Commission, the estate of Charles H. Fletcher, deceased, and the Centaur Company, the appellant herein, and that the adjudication contained in said order that the Fletcher estate was alone liable to the payment of the tax upon said fund, from which no appeal was taken by the State Tax Commission, was a binding adjudication upon it, and that thereafter the surrogate was without jurisdiction to assess a tax against the appellant. That the *pro forma* order of September 10, 1924, was *res adjudicata*, binding upon all the parties to the proceedings, subject only to review by direct appeal therefrom to the surrogate under the provisions of the Tax Law, we think is established by abundant authority. (*Matter of Wolfe*, 137 N. Y. 205; *Matter of Davis*, 149 id. 539; *Matter of Wormser*, 51 App. Div. 441; *Matter of Rice*, 56 id. 253.) The respondent, however, contends that the general principle enunciated in the above decision is not applicable to the situation here presented, inasmuch as the original *pro forma* order did not expressly exempt the appellant from liability for the tax, and that, therefore, said order was no adjudication in favor of the Centaur Company. We are unable to adopt this view. As we understand the rule, said *pro forma* order did

adjudge that there was a taxable transfer, a tax due thereon to the State, and that the Fletcher estate was liable therefor. Certainly the Surrogate's Court had jurisdiction of the subject-matter and of all the parties, including the Centaur Company, and it was in duty bound to determine these questions presented and when the *pro forma* order adjudged that there was a transfer of said undrawn compensation and that it became a part of and passed to the beneficiaries under the will of the decedent and was taxable to said beneficiaries, by the same token it must have adjudged that there was no transfer of said fund to the Centaur Company and absolved said company from the payment of any tax thereon. Prior to the making of said order the surrogate had obtained jurisdiction of all parties to the controversy. The State Tax Commission, the executors of the Fletcher estate, the beneficiaries under the will of the decedent, and the Centaur Company were parties thereto and had appeared by their respective counsel. The very question that the appellant now urges has become by the entry of the *pro forma* order *res adjudicata,* namely, the question as to the liability of the Centaur Company to pay a tax on the transfer of said fund, was sharply litigated before the appraiser. While there was no express provision in the order that the Centaur Company was not liable, the order imposing liability on the beneficiaries under the decedent's will surely amounted to the same thing. We are of the opinion upon such question that the State Tax Commission is estopped from questioning the provision of the *pro forma* order adjudging that the tax should be paid by the beneficiaries under the Fletcher will. It was unnecessary to create such estoppel that the adjudication should in express terms relieve the Centaur Company. It is sufficient that the order effected the same result. (*Clemens* v. *Clemens,* 37 N. Y. 59, 73.) In *Pray* v. *Hegeman* (98 N. Y. 351) Judge ANDREWS, writing for the unanimous Court of Appeals, said (at p. 358): " The general rule is well settled that the estoppel of a former judgment extends to every material matter within the issues which was expressly litigated and determined, *and also to those matters which, although not expressly determined, are comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered.* * * * *Whatever is necessarily implied in the former decision, is for the purpose of the estoppel deemed to have been actually decided.*" (Italics are the writer's.)

Surely in the proceedings before the Tax Commission the very question as to who was liable to pay the tax was directly litigated and decided. As before suggested, the *pro forma* order was contrary to the position assumed by the State Tax Commission and

the State was aggrieved thereby. The State Tax Commission could have appealed from such part of the order as held the fund taxable to the beneficiaries under the Fletcher will, and in taxing the tax to said beneficiaries at the one per cent rate. Upon such appeal the State Tax Commission could have asserted that the transfer was in fact to the appellant herein and was taxable at the highest rate. No appeal, however, was taken by the State Tax Commission from the *pro forma* order. Its time to appeal expired on November 9, 1924.

Furthermore, the appeal taken· by the executors of the Fletcher will from the appraiser's report and the *pro forma* order raised no question affecting this appellant. The sole ground upon which the executors appealed was as hereinbefore stated that the appraiser had erroneously included in the taxable transfer the sum of $254,510.17 as a part of the decedent's estate at the time of his death, and that in truth and in fact the said sum was no part of the decedent's estate at the time of his death, but was received by the estate subsequent to the decedent's death as a gift, and as such gift it was not subject to a transfer tax under the law of the State of New York.

After the death of Charles H. Fletcher a resolution was adopted on April 25, 1922, by the directors of the Centaur Company that " there be paid to the Executors of the said Charles H. Fletcher, as a matter of grace and not as a matter of right, in appreciation of the services rendered by him to the Company during his lifetime, a sum which, with his drawings during his lifetime, shall equal twenty-two (22%) per cent of the net profits of said Company at the date of his death." The president of the Centaur Company notified the representatives of the Fletcher estate of the adoption of such resolution, and that the Centaur Company would be prepared to pay the estate the sum of $254,510.17 upon receipt from the executors of Mr. Fletcher of a general release running from the estate to the Centaur Company. Thereupon a mutual release was executed between the Centaur Company and the Fletcher executors and on January 19, 1923, there was paid to the Fletcher estate by the Centaur Company the said sum of money. We are of the opinion that such gratuitous payment by the Centaur Company to the executors of the Fletcher estate does not materially affect the question presented upon this appeal.

The statute (Tax Law, § 232, as amd. by Laws of 1921, chap. 476) requires that the notice of appeal " shall state the grounds upon which the appeal is taken." The notice of appeal served by the executors of the Fletcher estate complied with such requirement. Thereupon the surrogate could decide no more than the question specifically presented by the notice of appeal. (*Matter*

*of Manning,* 169 N. Y. 449; *Matter of Davis,* 149 id. 539.)   In *Matter of Manning,* Judge O'BRIEN, writing for the Court of Appeals, said (at p. 451): " Moreover, the statute which permits an appeal from the order of the surrogate required the appellant to state in the notice of appeal ' the ground upon which the appeal is taken.' (Laws of 1892, ch. 399, § 13.)   The only ground stated in the notice of appeal is the order of the surrogate in regard to the valuation of the item or account referred to.   This appeal was brought by the executor, and the public authorities acquiesced in everything decided by that order.   If the surrogate had committed an error in adjusting the commissions of the executor at too large a sum, they, also, could have appealed from his decision and required him to modify it in that respect.   The purpose of requiring the notice of appeal to the surrogate to state the grounds the appeal is made upon was to limit the questions to be reviewed by him to those only stated in the notice.   The contention on the part of the public authorities has been, from the first, that the item of the account was taxable the same as the rest of the estate. The notice of appeal to the surrogate brought up before him only that single question, and neither the Supreme Court nor this court can review any question except that reviewed by the surrogate, and so, we think, the order must be affirmed, with costs."

In *Matter of Davis (supra)* the Court of Appeals held that the *pro forma* order not appealed from was conclusive as between the parties to the proceeding as to all matters established before said order.   In that case there was an appeal by a beneficiary from the surrogate's *pro forma* order in so far as it directed the addition of interest by the county treasurer of Ulster county to the amount of the tax upon the transfer.   Such beneficiary did not raise in her notice of appeal the valuation placed upon the transfer itself or the amount of tax assessed against the estate.   The only question raised was as to the addition of interest at the rate of ten per cent per annum.   Nevertheless, the surrogate upon the appeal reversed the *pro forma* decree.   The General Term held that such reversal was unauthorized (91 Hun, 53) and the Court of Appeals unanimously affirmed.   Judge MARTIN, writing for the Court of Appeals in *Matter of Davis* (149 N. Y. 539), said (at p. 547):

" The respondent's appeal to the surrogate was only from that portion of the decree which directed the county treasurer to add interest at the rate of ten per cent from January 16, 1887.   She did not appeal from the appraisal or valuation of the estate, or from the assessment of the tax.   Upon that appeal the learned surrogate was not authorized to reverse the entire decree, to make

2

a new appraisal or valuation of the estate, or to interfere with any portion of it except that appealed from, as it is a well-settled rule that only the parts of a judgment or decree which are appealed from can be reviewed. (*Sands* v. *Codwise*, 4 Johns. 536; *Kelsey* v. *Western*, 2 N. Y. 500; *Robertson* v. *Bullions*, 11 N. Y. 243; *Murphy* v. *Spaulding*, 46 N. Y. 556.)

" Moreover, section 13 of chapter 399 of the Laws of 1892 provides that upon such an appeal, the notice shall state the grounds upon which it is taken, and where a statute requires the grounds of the appeal to be stated, none except those specified can be considered. The hearing must be limited to the errors noticed in the appeal. Otherwise the requirement of the statute would be without significance. It follows that the value of the estate transferred to the respondent and the tax to be paid thereon, were established by the decree of October 15, 1894, and as that portion of the decree has never been appealed from or properly reversed, it is conclusive between the parties upon those questions."

We, therefore, conclude that the surrogate in the case at bar was without jurisdiction to change the provision of the original *pro forma* order as to matters not raised by the appeal of the representatives of the Fletcher estate. We are, therefore, of the opinion not only that there was no transfer from the decedent to the Centaur Company, rendering the latter company liable to the payment of a tax thereon, but also that the *pro forma* order of September 10, 1924, was *res adjudicata* as between the Centaur Company and the State Tax Commission, and that the State Tax Commission, not having appealed therefrom, is estopped from questioning its provisions. We are, furthermore, of the opinion that the surrogate in reversing provisions of the original *pro forma* order and in determining questions not presented, acted without jurisdiction.

The order of the surrogate of June 12, 1926, should be reversed, and the *pro forma* order of December 24, 1925, should be modified by striking therefrom so much thereof as assessed a tax of $17,110.81 against the appellant, and as so modified the said order should be affirmed, with costs of this appeal to the Centaur Company to be paid by the State Tax Commission, and the proceeding remitted to the surrogate for further action in accordance with this opinion.

CLARKE, P. J., DOWLING, MCAVOY and BURR, JJ., concur.

Order of June 12, 1926, reversed and order of December 24, 1925, modified as directed in opinion and as so modified affirmed, with costs to appellant against the respondent State Tax Commission, and proceeding remitted to the surrogate for further action in accordance with opinion.